ALPHA FAY TARRY ET AL., APPELLEES, V. RAY S.
JOHNSTON ET AL., APPELLANTS.

FILED APRIL 9, 1926.   No. 25143.

1.  **Injunction:** SUIT TO RESTRAIN PHYSICIAN UNDER RESTRICTIVE
    AGREEMENT.  A suit for an injunction to prevent a licensed
    physician from practicing his profession within a restricted ter-
    ritory in violation of his contractual obligations is one of equit-
    able cognizance.

2.  ———: PHYSICIAN'S RESTRICTIVE AGREEMENT.  A licensed
    physician who purchases the good will and other property of a
    sanitarium and agrees not to practice his profession within a
    radius of 150 miles therefrom, if he fails to pay the purchase
    price and subsequently loses possession by default, may be en-
    joined in equity from violating his restrictive agreement, when
    that remedy is essential to the protection of the seller's con-
    tractual rights.

3.  **Physicians and Surgeons:** EMPLOYMENT OF PHYSICIANS BY OWNER
    OF SANITARIUM.  An owner of a sanitarium may employ physi-
    cians to practice their profession therein without subjecting
    himself to penalties for practicing medicine without a license.

4.  **Damages:** LOSS OF GOOD WILL.  In an action at law for the
    loss of good will, the evidence must contain sufficient data to
    enable the jury, with a reasonable degree of certainty and ex-
    actness, to estimate the actual damages.

5.  **Injunction:** CONTRACT: BREACH: PARTIAL RELIEF.  An action
    at law on purchase-money notes representing only portions of
    the consideration for the sale does not afford an adequate remedy
    for the purchaser's breach of the contract, where unpaid accru-
    ing net profits of a lucrative business included in the sale are
    also portions of the purchase price.

6.  **Contracts:** VALIDITY: PROVISION FOR LIQUIDATED DAMAGES.  A
    contract of sale providing that partial payments of the purchase
    price during a stipulated period of years may be retained as
    liquidated damages for the purchaser's breach of contract is not
    necessarily void.

7.  ———: PHYSICIAN'S RESTRICTIVE AGREEMENT.  A licensed
    physician who purchases the good will and other property of a
    sanitarium may bind himself by an agreement not to practice
    his profession within a radius of 150 miles therefrom, if the
    restriction is necessary for the protection of the seller's con-
    tractual rights and does not injure the public by restraining
    trade.

Tarry v. Johnston.

8. ———: ———: LIMITATION. A contract which fails to specify in direct terms the time limit of restraint on a physician's right to practice medicine in a restricted area is not for that reason void, a reasonable time being implied.

APPEAL from the district court for Douglas county: WILLIAM G. HASTINGS, JUDGE. *Affirmed.*

*Burkett, Wilson, Brown & Wilson* and *McKenzie, Lower & Sheehan,* for appellants.

*Benjamin S. Baker* and *Ralph T. Wilson, contra.*

Heard before MORRISSEY, C. J., ROSE, DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

ROSE, J.

This is a suit in equity to protect violated rights of plaintiffs under a contract by them to sell and by Ray S. Johnston to buy the business and property of the "Dr. E. R. Tarry Sanitarium." The answer to the petition challenged jurisdiction in equity and contained pleas that the contract was fraudulent and void. The district court rendered a decree in favor of plaintiffs. Defendants appealed.

The subject-matter of the sale was formerly the property and business of E. R. Tarry, a practicing physician in Omaha and the proprietor of a sanitarium there. He was a proctologist—a specialist in the treatment of rectal diseases. He employed a secret method of treatment and by advertisements and cures during a period of years he built up an extensive and lucrative practice with patients from many places throughout the United States. He employed as an assistant, for $150 a month, Ray S. Johnston, a physician with about a year's practice at Waterloo, a village near Omaha. This arrangement was continued for nearly a year. In 1918 Johnston's compensation was changed to 25 per cent. of the net profits of Tarry's professional business but the duties of Johnston's employment and his relationship to Tarry and to the sanitarium remained the same until Tarry died intestate March 20, 1920,

leaving as his only heirs his widow, Alpha Fay Tarry, and their infant daughter, Virginia K. Tarry. All the inheritable property of Tarry passed to his heirs under the statutes of descent. His widow was appointed guardian of the infant daughter and his estate was duly administered. After Tarry's death Johnston was retained to carry on the business of the sanitarium for three-fifths of the net profits, the other two-fifths being the share of the heirs named. There was no change in the terms of the employment of Johnston or in the management of the sanitarium until the heirs received from a third person and rejected an offer of $30,000 for their proprietory rights in the institution. June 23, 1920, the contract of sale and purchase in controversy was executed. Under it Johnston was in charge of the sanitarium and business thereof until the present suit was begun October 1, 1925.

According to the terms of the contract the property purchased by Johnston included the business of the "Dr. E. R. Tarry Sanitarium" and the use of that name; also the furniture, fixtures, surgical instruments and equipments, the advertisements, the Tarry method of treatment in the practice of proctology, the good will of the business as well as the leased location in rooms 240 and 242 on the east side of the second floor of the Bee Building in Omaha, now the Peters Trust Building.

A portion of the purchase price was $40,000, $500 payable in cash and the remainder in four equal payments due in one, two, three and four years, respectively, from date, evidenced by purchase money notes bearing annual interest at 6 per cent. In addition defendants agreed to pay 10 per cent. of the net profits for an ensuing period of five years.

Following are some of the conditions of the sale: Title to the purchased property to be retained by the sellers until performance by Johnston of his obligations; all business to be conducted in the name of the "Dr. E. R. Tarry Sanitarium," correspondence to be thus signed and no other name to be used in any of the advertisements; vouchers for

disbursements required; books of account open to the inspection of the parties to be kept; money and checks to be deposited 'in the Omaha National Bank; violation of the contract by Johnston obligated h'im not to practice medicine within a radius of 150 miles from Omaha and permitted the sellers to retain as liquidated damages payments on the purchase price. The contract also provided for the employment of Joseph Dawson at the sanitarium and prescribed his duties and obl'igations.

The widow and infant daughter of Tarry are plaintiffs and Johnston and Dawson are defendants.

Plaintiffs made the contract a part of the petition in equity and alleged in effect that defendants violated their contractual obligations, including those already outlined herein, absorbed for their own benefit part of the business of the sanitarium, retained a portion of plaintiffs' share of the net profits, refused to pay their second, third and fourth instalments, evidenced by their notes, and were in default in the aggregate sum of $25,000. Plaintiffs offered to surrender the unpaid notes for cancelation. The petition also contained pleas that defendants are unable to respond in damages and that plaintiffs have no adequate remedy at law. There was a prayer for equitable relief generally, for restoration of the purchased property to plaintiffs, for retention of all payments of purchase money as l'iquidated damages, and for an injunction to prevent Johnston from practicing medicine within a radius of 150 miles from Omaha.

In substance the principal defenses were as follows: The action was not cognizable in equity. If plaintiffs were damaged they had an adequate remedy at law. By means of a fraudulent representation by Alpha Fay Tarry that the property was worth $40,000 defendants were induced to enter into the contract. It would never have been executed in the absence of fraud inducing the sale. The provisions for the forfeiture of payments on the purchase price were not necessary agreements for the protection of plaintiffs' interests and were unenforceable. The restraints on

the right of Johnston to practice medicine were violative
of public policy and were unreasonable and void.   In any
event plaintiffs were not entitled at the same time to liqui-
dated damages, to a return of the property sold and to an
injunction preventing Johnston from practicing his pro-
fession.    The facts on which these defenses were based
were pleaded in detail in the answer and were denied in
the reply.

On the issues of fact and law the findings of the district
court were in favor of plaintiffs.   Under the decree pos-
session and control of the sanitarium and of the business,
property and interests connected therewith were restored to
plaintiffs and the latter were permitted to retain the pay-
ments made on the purchase price as liquidated damages,
but plaintiffs were required to surrender the unpaid notes
for cancelation.   Johnston is enjoined from practicing med-
icine or surgery within a radius of 150 miles from Omaha
so long as plaintiffs or their assigns carry on the business
of the sanitarium.   Defendants, however, were permitted
to repossess the property and rights in controversy by
paying the remainder of the purchase price within 20
days from November 3, 1925, the injunction in that event
to be dissolved.   It is from this decree that defendants
appealed.

The first question for consideration is the jurisdiction
of a court of equity to grant the relief sought by plaintiffs.
On this point defendants insist there is a total lack of proof
that they are insolvent or that they are unable to respond
in damages or that they cannot pay their notes.   They
argue, therefore, that the suit in equity is not maintain-
able.   In this connection reference is made to evidence tend-
ing to show that defendants at various times paid in money
items aggregating $24,724.26 on the purchase price.   They
take the position that a court of equity cannot properly
forfeit that sum and at the same time restore the sani-
tarium and business to plaintiffs and enjoin Johnston from
practicing his profession.   This point, though ably pre-
sented, does not seem to be conclusive.   Whether the case

is one of equitable cognizance depends upon the peculiar facts disclosed by the record.   If the contract is valid in all its parts equity is clearly a proper remedy.   The purchase price was not merely $40,000.   In addition, plaintiffs were entitled to 10 per cent. of the net profits for five years from the date of the sale.   This was not unreasonable in view of the earning capacity of the sanitarium with its established business, advertising and good will.   The owners of hospitals and sanitariums may legally employ physicians and surgeons to perform professional services therein.   Both before and after the death of Tarry, Johnston had managed, or assisted in managing, the business for a percentage of the profits.   He knew and practiced Tarry's methods of treatment and was familiar with the advertising which attracted patients to the sanitarium.   Defendants did not carry out their obligations in good faith.   Johnston intended to practice proctology in Omaha on his own account before paying in full the consideration for his purchase. The business was not conducted wholly in the name of the sanitarium.   Defendants did not pay all their notes as they matured.   At the time of the trial the unpaid portion of the purchase price exceeded $25,000.   Johnston transacted at least a substantial part of the business in his own name. He did not keep all the records of his transactions open to the inspection of plaintiffs.   There was no attempt to take Johnston's professional life as security for the purchase price, a charge made by defendants in an earnest argument.   The parties to the contract agreed that plaintiffs should retain title while obligations of Johnston remained unperformed.   The agreement was reasonable and was one which could lawfully be made.    The security on which plaintiffs rely is the title to the property sold.   If Johnston should be permitted to retain good will and other property rights the security to that extent would be destroyed or lost.   With Johnston practicing proctology contrary to his agreement, in rivalry with the established business of the sanitarium, good will and other property rights flowing from plaintiffs' title could not be fully protected.   In an

action at law involving a recovery for the loss of good will the evidence must contain sufficient data to enable a jury, with a reasonable degree of certainty and exactness, to estimate the actual damages. Restoration of the property to protect plaintiffs' title and security would not be complete without a full return of good will and other property rights. An action at law on the notes would not afford a full measure of recovery. Plaintiffs' percentage of the net earnings was a substantial part of the purchase price. With the available records of the office failing to show accurately the gross earnings and disbursements of the institution, proof by plaintiffs of losses would be difficult, if not impossible. Relief, under the peculiar circumstances of the present case, required an injunction—an instrument of equity—to restore to plaintiffs possession and control of the sanitarium and to prevent the rivalry of Johnston who used his contract of purchase profitably for a five-year period and violated the obligations under which his lucrative privileges were acquired. Jurisdiction in equity to protect the security of plaintiffs was not, therefore, based on the ethics of Shylock. Besides, defendants themselves pleaded affirmatively for a cancelation of the contract on the ground of fraud and for other equitable relief and thus invoked an exercise of the judicial powers of which they now complain. The conclusion is that the trial court did not err in overruling the challenge to jurisdiction.

Complaint is also made because the district court permitted plaintiffs to retain the payments of purchase money as liquidated damages. This provision of the decree is characterized by defendants as a forfeiture abhorrent to equity, though responding to a stipulation of the parties. The case made by plaintiffs does not depend upon the forfeiture, abandonment or annulment of any part of the contract. The relief sought is based on conditions to which Johnston had agreed. Equity was sought on the terms of the written instrument after he had received pecuniary benefits under it for a period which seemed at the date of its execution to be sufficient for full performance on his part.

There are circumstances under which parties may stipulate
in advance for liquidated damages in the event of non-
performance.   The situation, in view of what subsequently
transpired, appears to have justified the precautions taken
in the present instance.   In making the contract the parties
naturally contemplated a situation following the sale.
Plaintiffs entrusted defendants with the control of the sani-
tarium for a period of five years.   Under the terms of the
purchase the earnings of an established, profitable business
were in Johnston's hands.   The benefits of advertising, the
good will and the other property rights of the institution
were committed to his keeping.   The temptation to serve
himself at the expense of plaintiffs was constantly present.
Under his contractual rights he met and treated privately
patients who called at his office.   The accounts of earnings
depended on services guarded by his professional privileges
as a physician and surgeon.   With these and other sur-
rounding circumstances in contemplation, the stipulation
for liquidated damages does not seem to be unreasonable.
The district court, however, as a condition of granting to
plaintiffs equitable relief, allowed defendants to repossess
the property purchased, title and all, by paying the re-
mainder of the purchase price, thus permitting them to
prevent what they now denounce as a forfeiture.   On this
phase of the controversy the finding on appeal is the same
as that of the district court.

A further argument of defendants is based on the con-
tention that the restriction on the right of Johnston to
practice medicine within a radius of 150 miles from Omaha
is not necessary for the protection of plaintiffs' rights, is
violative of public policy, is an unreasonable restraint of
trade and is an invasion of his privileges as a licensed
physician.   The good will of a professional business may
be legally sold in connection with other property rights to
which it is attached.   In making a sale of that kind reason-
able restraints on the practice of a profession may be im-
posed, if necessary for the protection of contractual rights.
This is well established by precedent and the reasonable-

ness of such a restraint is the test of its validity.     In the'
present case plaintiffs, for reasons already mentioned in
considering other questions, were justified in imposing re-
straints to protect their security—the title to the property
sold.     On this feature of the litigation Johnston insists,
nevertheless, that the area from which he was excluded in
the practice of his profession was unreasonable.     It is
true, as stated in the, argument of defendants, that a radius
of 150 miles from Omaha includes a vast, populous terri-
tory, but some of Tarry's patients had come from places
far beyond the boundary of the restricted area.     Johnston
was not excluded from practice in Nebraska or in the sur-
rounding states.     With present methods of transportation
it was common knowledge that patients residing more than
150 miles from Omaha could make the trip to the sani-
tarium by airplane in less than two hours and by automobile
in half a day.     The evidence shows that other physicians
in Omaha were qualified to practice the Tarry method
of proctology there.     Testimony that the public will suffer
from the restraints imposed on Johnston is not convincing.
Outside of the restricted territory the area is even more'
extensive and populous than that from which the decree
excluded him.     From the standpoint of both the public and
Johnston, therefore, the restraint of which the latter com-
plains does not seem unreasonable.

There is a further contention that the contract is void
because the restriction on Johnston's right to practice his
profession in the territory specified is without limit as to
time.     That informality does not necessarily destroy the
contract.     A reasonable period of restraint sufficient for the
protection of plaintiffs' rights was fairly implied from the
entire instrument.     So long as plaintiffs or their assigns
shall carry on the business of the sanitarium is the period of
restraint fixed by the decree.     This was a proper condition
on which equitable relief was granted to plaintiffs and was
not the making of a contract for the parties.     Moreover, the
injunction was not absolute.     Defendants, by paying the
remainder of the purchase price, were permitted to retake

the property without any restraint on the right of Johnston to practice his profession.

The relief granted responds to the contract. If the conclusions reached are correct, the position that plaintiffs are not entitled at the same time to the property, to the payments made, and to the injunction is untenable.

In all material respects the findings on appeal are the same as those of the district court. Owing to the delay necessarily incident to the appeal the time in which defendants may pay the remainder of the purchase price, and thus repossess the property and rights in controversy with the injunction dissolved, is extended 20 days after the mandate is delivered to the clerk of the district court. With the time for payment thus extended the judgment is

AFFIRMED.