WILLIAM J. EVANS, Plaintiff-Below,
Appellant,

*vs.*

FRANK A. GUNNIP, Defendant-Below,
Appellee

FRANK A. GUNNIP, Defendant-Below,
Appellant,

*vs.*

WILLIAM J. EVANS, Plaintiff-Below,
Appellee.

*Supreme Court of Delaware, July 9, 1957.*

*On Motion for Reargument October 7, 1957.*

*Januar D. Bove, Jr.,* of the firm of Connolly, Cooch & Bove, of Wilmington, for plaintiff below.

*Arthur J. Sullivan* of the firm of Morris, James, Hitchens & Williams, of Wilmington (*Howard L. Williams,* Wilmington, with him on the briefs), for defendant below.

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, JJ., sitting.

BRAMHALL, Justice: This case comes before this court on cross appeals from the judgment of the Vice Chancellor in a suit for accounting brought by the plaintiff below, William J. Evans, against the defendant below, Frank A. Gunnip. Evans' appeal relates solely to the finding of the Vice Chancellor as to the value of his share of the partnership good will; Gunnip's appeal, with the exception of

certain disputed items in which the Vice Chancellor found in his favor, is from the entire judgment.

On July 1, 1950, Evans was employed as a senior accountant by the firm of Deppert and Gunnip, Certified Public Accountants in the city of Wilmington. Previously he had been employed in a similar capacity by a somewhat larger accounting firm in the city of Philadelphia. Evans accepted employment with Deppert and Gunnip because of their statement that if within a year or so his services should prove acceptable there would probably be an opportunity for him to become a partner. Evans' duties were those of staff manager. In July of 1951 Evans was made a partner. In the partnership agreement he was given the right to purchase a one-third interest in the share of a partner upon his death or retirement from the partnership. Evans had no capital investment in the partnership, but was given his proportionate share of the accounts receivable and work in process. In November of 1952 Deppert withdrew from the firm. Gunnip and Evans, the remaining partners, agreed to pay Deppert the sum of $30,000 for his interest in the partnership, including good will. There was no agreement on the part of Deppert not to compete with the partnership of Gunnip and Evans. However, he accepted private employment.

Upon Deppert's withdrawal from the partnership, a new partnership was immediately formed between Gunnip and Evans. The terms of such partnership were never reduced to writing. While there seemed to be some uncertainty, as noted by the Vice Chancellor, relative to the percentage to be received by each partner, the Vice Chancellor found that the accounting was to be made on the basis that Gunnip was to have a 60% and Evans a 40% interest in the partnership assets. We think that such finding was warranted by the record. No term was specified as to the duration of the partnership.

The new partnership acqured the clients, books, records, employees, work papers of clients, and other assets of the old partnership. The number of accounts increased and a number of new employees were added. It was generally successful.

In October of 1953 a disagreement arose between Gunnip and Evans, as a result of which Gunnip gradually assumed complete charge of the management. Evans decided to accept an offer of private employment. Evans left the partnership on October 31, 1953. At that time it was agreed that Gunnip would shortly give to Evans a statement of the financial condition of the partnership, upon which basis the accounting was to be made. This was never done. Relative to the situation at this point, the Vice Chancellor found that by this time Gunnip and Evans had come to the parting of the ways and that Evans' ultimate decision to leave was merely a recognition of the inevitable, to which Gunnip "readily agreed."

On November 1, 1953, the day following Evans' withdrawal, Gunnip merged the partnership assets of Gunnip and Evans into a new firm, known as Gunnip, Issacson, and Stolper. Evans never transferred his interest in the partnership of Gunnip and Evans to either Gunnip or the new firm, nor did he ever specifically give his consent to such transfer.

At the trial before the Vice Chancellor, Evans endeavored to prove the value of the good will of the partnership of Gunnip and Evans. He offered the testimony of a certified public accountant and general partner in a nationally known accounting firm. His testimony was that there was partnership good will in the firm of Gunnip and Evans. He also testified relative to the methods or formulae generally used in proving the value of partnership good will. His testimony was substantiated by the testimony of other certified public accountants. It was also shown that a few months before the dissolution of the partnership Gunnip had endeavored to find a purchaser for the sum of $100,000, although it is not entirely clear as to just what assets would have been included had this sale gone through. It was proved that in the partnership agreement between Gunnip and Issacson and Stolper the value of Gunnip's interest in the good will of the partnership was fixed at $100,000 with a proviso that Gunnip would receive 75% thereof upon his withdrawal from the partnership. Gunnip did not directly offer any evidence as to the value of the good will of the partnership.

The Vice Chancellor found that Evans was entitled to receive from the partnership the sum of $16,996.08 for all the assets of the partnership with the exception of good will. He found Evans' interest in the good will to be worth $10,000. The Vice Chancellor also ordered interest paid to Evans on the value of his share of the assets of the partnership, with the exception of good will, for a period beginning six months after the dissolution.

Evans appeals from the finding of the Vice Chancellor as to the value of good will. Gunnip appeals generally except as to certain matters in which the Vice Chancellor found in his favor.

We first consider whether or not partnership good will existed. Defendant contends that the good will was that of the individual partners, and is therefore not an asset of the partnership in the distribution of its assets.

The evidence offered by Evans relative to the existence of good will in the partnership showed that practically all the accounts were recurring, that there was very little erosion; that the profits in proportion to the total billings were large; that the accumulation of a great deal of the history in the permanent files was of considerable value; that the accounts of a retiring partner, if properly serviced, generally remain with the partnership; that Deppert, upon his retirement from the firm of Deppert and Gunnip—predecessor to Gunnip and Evans—received good will; that Gunnip endeavored to sell the assets of the partnership business for $100,000; that in the partnership agreement between Gunnip and Issacson and Stolper the good will was fixed at $100,000, 75% of which might be withdrawn by Gunnip upon his retirement from the partnership. Factually this testimony was not disputed by Gunnip, although he denied the inferences therefrom made by Evans. The Vice Chancellor found that partnership good will existed.

The question of whether or not good will may exist in a professional partnership is one of first impression in this state. Authorities in other states differ. Some courts, as in the case of *Cook v. Lauten*, 1 *Ill.App.2d* 255, 117 *N.E.2d* 414, hold that good will in a professional partnership is entirely personal, consisting of confidence in the in-

tegrity of the individual, and therefore not attributable to a professional partnership.

We do not agree with the holding in *Cook v. Lauten, supra,* and other similar cases, that there can be no partnership good will in any professional partnership. While it may be true that in such a partnership greater emphasis may be placed upon the personal qualities of the individual partners than would be the case in a commercial partnership, the personality and ability of the partners are important in nearly every partnership. We agree rather with the decisions laid down in the Massachusetts cases of *Whitman v. Jones,* 322 *Mass.* 315, 77 *N.E.2d* 315, and *Rutan v. Coolidge,* 241 *Mass.* 584, 136 *N.E.* 257, that the presence or absence of partnership good will is generally a question of fact for the trial judge to determine. The Vice Chancellor found that the partnership good will existed in this case. We think that there was ample evidence in the record to support his finding.

But the defendant says there can be no good will in a partnership which is dissolved where both partners are free to compete with each other for the partnership business and that one partner should not be required to account for the good will of the partnership unless there has been an appropriation by a partner of the retiring partner's interest. Defendant denies that the interest of Evans was appropriated by Gunnip. He further contends that the terms of the agreement between Gunnip and Issacson and Stolper have no probative value in determining whether or not Gunnip appropriated the good will of the partnership.

Defendant, however, admits that under some circumstances the good will of an individual engaged in a profession may be the subject of transfer and that the transferor may be compensated for it. However, he says that in such cases there is always some evidence—such as an agreement not to compete or the fact that the retiring partner remains with the firm for a limited period of time in order to assist the partnership in retaining the business—showing a reasonable probability that the business will remain with the partnership. Defendant contends that since Evans made no such agreement with

Gunnip, but retained the right to endeavor to hold as many of the accounts of the partnership as he possibly could, no good will existed in the partnership which could be transferred.

It may be true that Evans did not enter into an agreement not to compete. However, the evidence is that he did endeavor, with some success to persuade those clients of the partnership with whom his association was particularly close to remain with the partnership. It is also a fact that he advised Gunnip, at the time of the dissolution that he was not intending to compete and has not done so since that time.

We do not pass upon the right of a partner to solicit the clients or customers of a partnership of which he is a retiring member where there is no agreement, express or implied, to the contrary, because the case before us is not such a case. The Vice Chancellor found that there had been a transfer by Gunnip of the assets, including the good will, of the partnership. We think that the record fully justified such conclusion. The day after Evans' withdrawal from the partnership of Gunnip and Evans, Gunnip entered into an agreement with Issacson and Stolper to form a new partnership to be known as Gunnip, Issacson, and Stolper. At the same time, notice was given in the newspapers that Gunnip, "as successor to Gunnip and Evans," was transferring the business to the new partnership. Admittedly, from the testimony of Gunnip himself, negotiations between the new partners and the transfer of the partnership agreement had been going on for some time prior to Evans' withdrawal—all without his knowledge or consent. While Evans withdrew from the partnership on October 31, 1953, the partnership was never formally terminated. Evans still retained an interest in the partnership, including the good will, at the time of the transfer of its assets to the new firm of Gunnip, Issacson, and Stolper.

As to Gunnip's objection that the agreement between Gunnip and Issacson and Stolper had no probative value in determining this question, we think that while, of course, it may not be conclusive proof as to the value of the partnership good will, it was pertinent for the purpose of showing the intent on the part of Gunnip to transfer the

good will of the partnership and that Gunnip placed upon such good will a very substantial value. The fact that the transfer occurred immediately upon the dissolution of the former partnership makes the agreement even more important. We think that the finding of the Vice Chancellor that the assets of Gunnip and Evans, including the good will, were transferred by Gunnip to the new partnership of Gunnip, Issacson, and Stolper, without the consent of Evans, should be affirmed.

We come now to the value of Evans' interest in the good will of the partnership of Gunnip and Evans. The Vice Chancellor found the value of Evans' interest therein to be $10,000. Both parties, for different reasons, assert that the Vice Chancellor in making this finding was in error. Plaintiff contends that the sum fixed by the Vice Chancellor was entirely inadequate and contrary to the undisputed testimony in the case. Defendant contends that no sum should have been allowed for good will but that, in any event, the allowance of the sum of $10,000 was excessive.

The Vice Chancellor found Evans' interest in the partnership, including good will, to be 40%. In a footnote to his opinion he agreed that the good will of the partnership had a so-called "theoretical" value of $100,000. However, the Vice Chancellor stated that in view of the fact that Gunnip had endeavored to sell all the assets of the partnership for $100,000, he felt that such a figure was not realistic. The Vice Chancellor was also of the opinion that the good will attached to the partnership was more personal rather than partnership good will. The Vice Chancellor did not find the value of partnership good will, nor did he set forth in his opinion how he reached the figure of $10,000 as the value of Evans' interest therein.

We think that the valuation by the Vice Chancellor of Evans' interest in the partnership good will was contrary to the undisputed evidence in the case and constituted error. Having found that partnership good will existed and that Evans was entitled to a 40% interest therein, the Vice Chancellor should have proceeded to ascertain the value of the partnership good will and to award to Evans a 40% interest in that figure in accordance with his finding.

This court has held in several cases that when the evidence does not support the finding of the court below, this court, sitting in review of an equity case, may, in proper circumstances, make its own factual findings and direct the court below to give effect to them by the entry of a judgment. *Consolidated Fisheries Co. v. Consolidated Solubles Company*, 35 *Del.Ch.* 125, 112 *A.2d* 30; *Peyton v. William C. Peyton Corporation*, 23 *Del.Ch.* 321, 7 *A.2d* 737, 123 *A.L.R.* 1482; *New York Trust Co. v. Riley*, 24 *Del.Ch.* 354, 16 *A.2d* 772. Thus, since in this case no question of credibility of witnesses testifying orally is presented, and the record is complete, we may make our own findings and direct that they be given effect by the entry of a judgment.

According to the testimony of expert witnesses offered by plaintiff, the good will of the partnership was worth in excess of $100,000. The Vice Chancellor refused to accept this testimony, although uncontradicted, as unrealistic. However, this figure is supported, we think, by the fact that Gunnip himself in his partnership agreement with Issacson and Stolper fixed the partnership good will as $100,000, with a proviso, in the event of withdrawal that Gunnip would receive the sum of $75,000. We think that there is also corroboration in the efforts of Gunnip to sell the assets of the partnership for $100,000. It is true that it is not entirely clear just what was to be included in the assets to be sold. However, an examination of the statements of the partnership as of October 31, 1953, the date of its dissolution, shows clearly that the assets of the partnership included the accounts receivable, amounting to $23,739.85 and the capital contribution, amounting to $12,462.00 and, of course, the good will of the partnership. Since this figure was apparently agreed upon by both Gunnip and Evans and since it is not far out of line with the other evidence as to value of good will, we think that the sum of $100,000 is a fair value of the partnership business. Deducting the items of accounts receivable and capital contribution, amounting to $36,201.85, from the valuation of $100,000 leaves a difference of $63,798.15 as the value of the partnership good will. Evans' 40% of that would amount to $25,518.26, which sum we find he is entitled to as his share of the partnership good will.

Gunnip takes exception to the allowance of interest by the Vice Chancellor on the value of Evans' interest in the partnership

with the exception of good will. The Vice Chancellor fixed the date from which interest should begin as of May 1, 1954, exactly six months after the dissolution of the partnership. Gunip relies on the general rule, as set forth in 68 C.J.S. Partnership § 397, p. 913, that in the absence of an agreement to the contrary, interest should not be allowed on partnership accounts, although it may be charged if, under the circumstances of the particular case, the equities so require.

We accept Gunnip's statement as to the general law. However, we are of the opinion that in most cases the question of the allowance of interest depends upon the circumstances of the particular case and is largely discretionary with the court. See *Am.Jur Partnership, Section* 353, page 377 and cases cited in 66 *A.L.R.* 31, § IV. We think that an unreasonable delay after dissolution or an unjustifiable refusal to account may cause the court to charge a partner responsible for such delay with interest on the funds for which he should have accounted. This is especially true in a case where a partner who upon dissolution of the partnership holds the assets of the firm and is entrusted with the duty of winding up its affairs not only neglects to settle the account but transfers the assets of the firm for his own benefit. See case cited in 66 *A.L.R.* 43.

There was evidence that Gunnip neglected to make an accounting although at the time of dissolution of the partnership he had agreed to supply Evans with sufficient information from which an accounting could be had. The Vice Chancellor found that there had been a transfer by Gunnip of the assets of the partnership on the day after Evans withdrew therefrom. We think his finding was fully justified by the record. We also find that it was entirely within the discretion of the Vice Chancellor as to whether or not interest should have been charged against Gunnip and that the Vice Chancellor's finding in this respect should not be disturbed.

Gunnip contends that he should not be required to account for the value of accounts receivable which, after a period of several years from the time of the dissolution of the partnership, have not been paid. Gunnip transferred the accounts receivable as he did all the other assets of the partnership. As of October 31, 1953, he wrote

off $2,011.50 as uncollectible. Evans contended that only $1,195 of accounts receivable should have been written off. The Vice Chancellor accepted Gunnip's figure. However, since that time it would appear that apparently collections on these accounts have been somewhat less than the figure which he submitted to the Vice Chancellor as collectible.

We see no merit to this contention. At the trial the amount was in dispute; the Vice Chancellor accepted Gunnip's write-off over Evans' objection. Necessarily a value was placed upon these accounts at that time. Gunnip agrees that in the event that the amount realized on accounts receivable had been greater than had been anticipated by Gunnip and allowed by the Vice Chancellor, he would not have expected to reimburse Evans for his share of the difference. Under conditions exactly the reverse Evans should not be expected to contribute to any loss which Gunnip may have sustained. The objection is overruled.

The cause is remanded to the Court of Chancery of New Castle County with instructions to modify the judgment heretofore entered in the cause by substituting for the judgment for the plaintiff in the sum of $10,000 for his interest in the good will of the partnership of Gunnip and Evans a judgment for the plaintiff for said purpose in the amount of $25,518.26, and, as so modified, the judgment below is affirmed.

### On Motion for Reargument

Subsequent to the filing of the above opinion, a motion for reargument was filed by defendant. This motion was granted upon the very limited question as to the total amount of value of assets to be deducted from an over-all valuation of $100,000 in order to fix the value of the partnership good will.

Upon reargument we are convinced that in our original opinion we inadvertently failed to deduct the value of certain important assets and that it should be modified accordingly.

The record of the trial shows that Gunnip and Evans agreed that the sum of $100,000 was the least which they would accept for the

sale of the partnership business. We have accepted that figure as the proper valuation of the business, exclusive of assets which were not included in the contemplated sale. In our reconsideration of these different items and the correct amounts thereof which should be included as a part of the assets of the partnership which would have been involved in the sale of the partnership business, we accept the figures as found in plaintiff's Exhibit No. 21, showing the adjusted net worth of the partnership as of October 31,1953. At the argument defendant stated that these figures were acceptable. We think cash should not be taken into consideration, since it does not appear that Gunnip and Evans intended to transfer it in the sale of the partnership business. We omit also two other items relating to American Superior Stock and an item noted as "Stump Pay-Off" totalling $5,850, which the parties agreed should not be included as a part of the partnership assets. We think that all other items, including accounts receivable, work in process, furniture and fixtures, should be included as a part of the assets of the partnership business which would have been transferred and should therefore be deducted from the value of $100,000. We recapitulate as follows:

| | | |
|---|---|---|
| Value for sale, exclusive of cash assets | | $100,000.00 |
| Accounts receivable | 23,739.85 | |
| Work in process | 24,471.53 | |
| Suspense | 2,083.13 | |
| Prepaid postage | 102.06 | |
| Furniture and Fixtures (less reserve) | 9,529.87 | 59,926.44 |
| Less accounts payable | | 1,489.79 |
| | | |
| Net worth, exclusive of good will | | 58,436.65 |
| Value of good will | | 41,563.35 |
| Evans' share in good will (40%) | | 16,625.34 |

In conformity to the above finding, the value of the good will heretofore fixed by this Court at $25,518.26 is hereby modified and reduced to the sum of $16,625.34, and, as so modified and reduced, the judgment below is affirmed.