[No. 38559. Department Two. March 23, 1967.]

John J. Berg, *Respondent*, v. John W. Settle, Jr., *Appellant*.*

*O'Leary, Meyer & O'Leary*, for appellant.

*Foster & Foster* and *Lynch & Lynch*, for respondent.

Langenbach, J.†—Appellant Settle, a radiology specialist, had been engaged in practicing his specialty in Olympia since 1946. He had established a lucrative business and medical practice covering Lewis, Mason and Thurston counties. The inventory of his business showed extensive x-ray equipment valued in excess of $75,000 although greatly depreciated on the records. In 1950 respondent Berg

*Reported in 425 P.2d 635.

---

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

was employed as an assistant radiologist under a written contract.

On January 1, 1958, these parties entered into an oral agreement of partnership. Respondent agreed to purchase a 45 per cent interest in the business for the sum of $40,500 (to be liquidated by payments from respondent's share of profits) plus accruing interest. For the purpose of this partnership agreement the business was valued at $90,000.

Subsequently, negotiations were entered into with a third doctor and he was employed in the practice. It was contemplated that this doctor might later become a partner. To this end, in July 1960, a formula was agreed upon whereby the value of the partnership might be ascertained. That formula, as revealed in a "Letter of intentions at the occasion of Hendrik D. Stiggelbout entering into the partnership of John Settle, Jr. and John Berg, both of Olympia, Wash.," was as follows:

> Buying in: After the third year Dr. Stiggelbout shall decide if he wants to buy into the practice. If so he will pay 31% of the average net income of the partnership per year. The average will be over the preceding two years.
>
> . . . .
>
> Definitions: Net income is the amount left over after all business expenses have been subtracted from the gross. Gross income represents all the income received by the partnership.

Although this third doctor was employed by the partnership under a definite contract of employment, he never became an active partner. This transaction is referred to for what bearing it might have on the valuation of the partnership.

Early in 1962 disagreements arose between the partners. Consequently, on July 15, 1962, respondent withdrew. He moved to California where he has since practiced. Not being able to resolve the financial details of dissolution in the meantime, he commenced this action for an accounting in 1963. Both parties agreed upon the applicability of

RCW 25.04.420, which is that provision of the Uniform Partnership Act dealing with the rights of a retiring partner when the business is continued.

> When any partner retires or dies, and the business is continued . . . without any settlement of accounts as between him or his estate and the person or partnership continuing the business, unless otherwise agreed, he or his legal representative as against such persons or partnerships may have the value of his interest at the date of dissolution ascertained, and shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest, . . . .

The only issue in this case is the valuation of respondent's interest in the partnership as of July 15, 1962.

Respondent argued that the value of the partnership should be ascertained by using the formula agreed upon by the parties in 1960 when the third doctor was considering association with them. This will be referred to as the "market value" formula. Appellant argued that the proper measure was the salvage value of a defunct partnership. This will be referred to as the "book value" formula.

The trial court, in its memorandum opinion, stated:

> Defendant contends that the valuation should be based upon the value of office equipment and accounts receivable. Such a figure would be far below the true value of the interest of the partners but would probably be the amount to which plaintiff would be entitled in the absence of an agreement were it not for the provisions of the Uniform Partnership Act. . . .
>
> The Court will make no effort to place an arbitrary value upon the partnership business nor a value based upon earnings, since the partners, after full and free discussion, and for the legitimate business purpose of selling an interest to a third person, arrived at a valuation of $100,000.00.

Appellant's eight assignments of error are directed at what he considers the fundamental error of valuing the partnership in accordance with the market value formula previously established by the parties. In urging that the trial court abused its discretion, appellant argues as fol-

lows: The market value formula results in a valuation of between $90,000 and $100,000. However, the book value of the partnership is about $40,000. The thrust of appellant's argument is that the parties were free to agree upon the market value formula as a measurement of value upon dissolution; but because there was no such agreement that formula is not relevant to the ascertainment of value. There being no such agreement, the trial court was required to use the book value formula because any other would result in the inclusion of a good will element in the final valuation.

The question before the trial court was whether or not the respondent, under the circumstances of this particular case, was entitled to recover anything for good will upon dissolution of the partnership. Appellant referred to a note on the subject in 65 A.L.R.2d 521. The case to which this note is appended is very illuminating. *Evans v. Gunnip,* 36 Del. Ch. 589, 135 A.2d 128, 65 A.L.R.2d 513 (1957). There an oral partnership was formed between the accountants Evans and Gunnip. Later, Evans withdrew. The next day Gunnip merged the partnership assets into a new firm. It was shown that a few months prior to dissolution, Gunnip had sought a purchaser at the selling price of $100,000. In a suit for accounting, Evans received an amount which included a good will element. Gunnip contended that the good will was that of the individual partners and therefore not an asset of the partnership. The court held that the presence or absence of good will was a question of fact for the trial court and that there was sufficient evidence to support a finding that good will existed.

The issue then is whether good will existed in this particular case. In the cases cited by appellant, good will did not exist. In *Pollock v. Ralston,* 5 Wn.2d 36, 104 P.2d 934 (1940), the two partners were merely acting as sales agents for certain machinery firms. When the partnership was dissolved there was no good will as the sales agreements were subject to withdrawal at will, the business of the partnership was *not* continued and the respondent did not

hold himself out as the successor to the partnership business. In *Harstad v. Metcalf*, 56 Wn.2d 239, 351 P.2d 1037 (1960), one partner was a civil engineer and the other was an electrical engineer. When the partnership was dissolved and the assets divided, each continued his own particular portion of the business and there was accordingly no good will. In *Kalez v. Miller*, 20 Wn.2d 362, 147 P.2d 506 (1944), four doctors formed a partnership doing business under the assumed name of a clinic. One partner, the plaintiff, was subject to military duty. Thereafter, the remaining three doctors dissolved the partnership, excluding the absent partner from further relations with the business. The business of the old partnership was *not* continued, no old business contracts were renewed, and the new partnership was created under the names of the three remaining doctors. On these facts it was determined that there was no good will to be distributed. Two judges dissented.

██  In the instant case, appellant argued that after the respondent left for California this became a defunct partnership (which he urges we distinguish from a going concern). This, however, was not the fact. Appellant himself admits that the applicable rule is that governing the rights of a retiring partner where the business is continued. Finding a good will element under these circumstances was not erroneous. There was a substantial element of good will connected with appellant's business at the time respondent purchased a 45 per cent interest in it for $40,500. The business flourished and grew during the time of respondent's participation. The assets of the business included extensive x-ray equipment valued in excess of $75,000 though greatly depreciated on the records. The use of the x-ray equipment generated a great deal of income in addition to the professional services of the doctors as specialists in radiology. After the respondent left the business, appellant continued to use the partnership assets and x-ray equipment in the same place of business and he conducted the same business in the same hospitals as before. No attempt was made to divide the physical assets. All of them

continued to be used profitably. The trial court excluded evidence by which respondent hoped to show that after his withdrawal the appellant's income remained constant or increased. Appellant had set the value of this business at $90,000 when respondent first became a partner. Later, when dealing with a third doctor, he again set its value.

On the facts of this particular case it was not error for the trial court to value the interest of the respondent according to the market value formula agreed upon by the parties when dealing with the third doctor. This conclusion was well within the limits of proof offered at the trial.

There remains one additional matter. The parties defined net income as the amount remaining after all business expenses were subtracted from gross income. Analysis of the trial court's findings reveals that the operating expense of depreciation was not deducted with the other expenses to determine the net income figures which, when averaged, provided the agreed upon valuation of the partnership business. Therefore, the trial court's finding of the average net income for the years 1960 and 1961 should read $93,858.08 instead of $97,855.83. Forty-five per cent of this figure is $42,236.14. To this must be added interest at the rate of 3 per cent per annum in the further sum of $3,801.24. The total thus due respondent was $46,037.38, from which must be deducted the credits set forth in findings of fact No. 5 in the sum of $28,720.29. This leaves a net balance due respondent in the sum of $17,317.09 plus accrued interest from the date of the judgment. Accordingly, the judgment is modified to this extent, otherwise it is affirmed in all particulars. Respondent will recover costs. It is so ordered.

FINLEY, C. J., DONWORTH, OTT, and HUNTER, JJ., concur.