JERE D. DETTER, APPELLANT, V. MIRACLE HILLS ANIMAL HOSPITAL, P.C., A NEBRASKA CORPORATION, APPELLEE.

691 N.W.2d 107

Filed January 21, 2005.    No. S-02-688.

Duane M. Katz for appellant.

Robert E. O'Connor, Jr., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## INTRODUCTION

Appellant Jere M. Detter seeks further review of the Nebraska Court of Appeals' affirmance of the district court's judgment in which the district court determined the value of Detter's shares in a closely held professional corporation. Detter had filed actions, which were consolidated at trial, to (1) enforce certain promissory notes executed by Jeffrey Schreiber in favor of Detter and (2) judicially dissolve the professional corporation that Detter formed with Schreiber, Miracle Hills Animal Hospital, P.C. (MHAH). After Detter filed his petition to dissolve MHAH, MHAH elected to purchase Detter's shares, but the parties could not agree on the value of the shares. MHAH then filed a motion to have the district court determine the value. See Neb. Rev. Stat. § 21-20,166(2) to (4) (Cum. Supp. 2004).

The district court entered judgment in favor of Detter on the promissory notes, and that judgment is not part of this appeal. Regarding the value of the shares, the district court ruled that

pursuant to this court's decision in *Taylor v. Taylor*, 222 Neb. 721, 386 N.W.2d 851 (1986), professional corporations do not have a goodwill value when one of the members leaves. The district court therefore allowed "nothing by way of value for the good will of this corporation" and awarded Detter one-half of MHAH's working capital and tangible assets. The district court further found that Detter was not entitled to attorney fees pursuant to § 21-20,166(5)(b). The Court of Appeals affirmed. *Detter v. Miracle Hills Animal Hosp.*, 12 Neb. App. 480, 677 N.W.2d 512 (2004). This court granted Detter's petition for further review.

## BACKGROUND

Detter and Schreiber are veterinarians. In 1991, they combined their practices to form MHAH. Detter and Schreiber each contributed $5,000 to the new corporation, and each owned 50 percent of the shares. They were the only members on the board of directors. At the same time the parties agreed to incorporate, Schreiber executed promissory notes in favor of Detter, which notes were in consideration of Detter's contribution of "greater assets" to the corporation.

In October 1997, Schreiber informed Detter that he would no longer make payments on the notes unless Detter agreed to compensate Schreiber for management services. Schreiber and Detter also disputed how much in support services and inventory MHAH should be providing to the pet grooming service Schreiber's wife operated out of MHAH on a commission basis. Settlement negotiations took place in the spring of 1998 but were unsuccessful. In May 1998, Detter commenced an action against Schreiber on the notes.

During 1998, the office environment generally deteriorated. Schreiber began to keep MHAH's business check book at home, making it difficult for Detter to know the status of the business or participate in its management. In September 1998, Detter offered to buy Schreiber's interest in MHAH for $60,000. The offer contained no restrictions on Schreiber's ability to contact his clients.

The $60,000 offer was based on Detter's belief that the business was worth $228,000, of which he attributed $120,000 to the corporation's equipment, furniture, fixtures, trade name, sign, and

location. Detter attributed an additional $108,000 to the annual net income for both veterinarians—salary and dividends—produced from their current client base. Because Detter did not intend to restrict Schreiber's ability to retain his own clients, Detter's $60,000 offer was based only on a 50-percent share of the $120,000 value Detter attributed to the corporation's tangible assets, trade name, sign, and location. When Schreiber did not respond to the offer, Detter filed an action for judicial dissolution on November 18, 1998.

In this action for dissolution, Detter alleged that Schreiber had personally interfered, and had permitted Schreiber's wife and staff to interfere, with Detter's ability to practice at the clinic and participate in management. Detter claimed that the shareholders were deadlocked, that Schreiber had misapplied corporate funds to benefit himself, and that Schreiber had acted in an illegal and oppressive manner.

In March 1999, MHAH filed an election to purchase Detter's outstanding shares pursuant to § 21-20,166 (allowing, under specified conditions, election to purchase shares of shareholder petitioning for dissolution under Neb. Rev. Stat. § 21-20,162(2) (Cum. Supp. 2002)). Because the parties were unable to agree upon the fair market value of the shares, MHAH filed a motion to have the court determine the value of the shares. See § 21-20,166(4) (providing that after 60 days and upon party's motion, court shall stay dissolution proceedings and determine fair market value of shares). Detter continued to practice at MHAH until he resigned on September 4, 1999.

### DISTRICT COURT PROCEEDINGS

A bench trial was conducted in January 2002. Detter's valuation expert, Cynthia Wutchiett, is a certified public accountant who has specialized in veterinary business consulting, valuations, and acquisitions since 1985. Wutchiett testified that she had performed over 300 valuations of veterinary practices for buyers or sellers, including 3 or 4 in Nebraska since 1995. Wutchiett further testified, without objection, that on November 17, 1998, the day before the action for judicial dissolution was filed, MHAH had a fair market value of $182,082, which included goodwill value of $141,127. See § 21-20,166(4) (providing that parties may move

court to "determine the fair value of the petitioner's shares as of the day before the date on which the petition under subdivision (2) of section 21-20,162 was filed or as of such other date as the court deems appropriate under the circumstances").

Wutchiett also testified that her valuation of the practice was based on the excess earnings method and had two components: (1) working capital and tangible assets of the practice and (2) capitalization of excess earnings, defined as the practice's goodwill value. Wutchiett's valuation of the practice's goodwill was based on adjusted income and expenses for the 3 preceding fiscal years, 1995 to 1997. Wutchiett determined that revenues of the practice had increased 12 percent from 1995 to 1996, and 7 percent from 1996 to 1997, and that the practice serviced 1,300 clients and generated approximately 5,800 transactions annually. Wutchiett did not consider the corporate tax returns for 1998 to 2000, or whether any clients had left after the November 17, 1998, date of her valuation. Wutchiett derived excess earnings by deducting from the practice's annual income (1) normal operating expenses, adjusted to industry standards; (2) doctor compensation for veterinary services, calculated at 22 percent of doctor-generated revenue; and (3) doctor compensation for management services, calculated at 3 percent of doctor-generated revenue. Wutchiett did not assign a separate value to clients, but stated that their value was included in the goodwill valuation.

Wutchiett then weighted and averaged the net income for each of the 3 preceding years to produce the expected excess earnings of the practice, which she calculated at $33,419 per year. Wutchiett then testified that based on the history of the practice, there was a reasonable expectation the practice would continue to have the same amount in expected excess earnings. Wutchiett deducted the calculated expected return rate for the net assets of the practice, and characterized the balance, $28,801, as the practice's return on goodwill, or its income stream, that could be passed on to a willing buyer. The $28,801 was then multiplied by a capitalization factor of 4.9 to derive a total goodwill value of $141,127. The 4.9 factor represented a rate of return of 20.4 percent, which was Wutchiett's professional opinion of the rate of return a buyer would want to earn, as well as the risks associated with an investment in the practice. The goodwill value and net

assets value of the practice were combined for a total fair market value, as of November 17, 1998, of $182,082.

Wutchiett also testified that in her opinion, historical purchase transactions had shown goodwill value of a practice remains with the practice regardless of whether the associates or owners stay or go, and that neither she nor anyone else in the industry recognized goodwill attached to an individual veterinarian as opposed to the practice. Wutchiett further testified that it was very difficult for a veterinarian to retain clients when they leave or relocate a practice. Referring to a veterinary business valuation she was previously engaged in, Wutchiett testified that the particular veterinarian was able to retain only 30 to 40 percent of his clients despite aggressive advertisement, the closure of the old practice, and relocating only 5 to 6 miles from the prior practice. Schreiber did not object to Wutchiett's opinion as to the value of the practice.

Schreiber's valuation expert, Ronald Nebbia, took exception to Wutchiett's valuation because it included goodwill as an asset. Nebbia valued the practice at $35,912, based upon the practice's adjusted net tangible assets, accounts receivables, and par value of its 10,000 shares of stock, or $1 per share. Nebbia testified that "in a professional practice of this nature, goodwill primarily rests with the provider and not the practice."

The final issue presented at trial was whether Detter was entitled to expenses and attorney fees for Schreiber's alleged misapplication of corporate funds or Schreiber's alleged illegal and oppressive conduct. See § 21-20,166(5)(b) (providing for attorney fees and expenses when petitioning shareholder had probable grounds for relief because (1) directors acted in illegal, oppressive, or fraudulent manner or (2) corporate assets were being misapplied or wasted).

In finding generally in favor of Schreiber, the district court accepted Nebbia's $35,912 valuation of the practice, determining that pursuant to this court's decision in *Taylor v. Taylor*, 222 Neb. 721, 386 N.W.2d 851 (1986), there is no goodwill value for a professional corporation when one of its members leaves. The court also rejected Wutchiett's valuation of the working capital and tangible assets of the practice because "she based that on an equipment evaluation made by a man who never saw the equipment."

The district court then awarded Detter half of Nebbia's $35,912 valuation, or $17,956, plus $3,050 for half the value of a corporate vehicle, for a total of $21,006. The district court further concluded that Detter was not entitled to attorney fees, finding that Schreiber's conduct of which Detter complained did not rise to the level of misconduct that would warrant attorney fees pursuant to § 21-20,166(5)(b).

## COURT OF APPEALS' DECISION

Detter appealed to the Court of Appeals. Concluding that *Taylor, supra*, was a marital dissolution action and not directly on point, the Court of Appeals found support for the district court's judgment in two cases from other jurisdictions. See, *Detter v. Miracle Hills Animal Hosp.*, 12 Neb. App. 480, 677 N.W.2d 512 (2004), citing *Salinas v. Rafati*, 948 S.W.2d 286 (Tex. 1997), and *Smith, Keller & Assoc. v. Dorr & Assoc.*, 875 P.2d 1258 (Wyo. 1994). In determining that the district court did not err in its conclusion that "goodwill should not be included as an asset of a closely held corporation," the Court of Appeals stated:

> While the credentials of Wutchiett are certainly impressive, she determined the value of MHAH using a method giving the corporation credit for goodwill. As we mentioned previously, goodwill is not an asset with an assignable value in a professional corporation; it is not a marketable asset that stays with a corporation, but, rather, a nonmarketable one that leaves with a professional. Because Wutchiett's valuation of MHAH incorporated an asset that is not a marketable asset, we affirm the trial court's decision to reject her testimony. Based on our review of the record, we find that the trial court properly rejected Detter's method of valuation for MHAH.

*Detter*, 12 Neb. App. at 489, 677 N.W.2d at 519. Further agreeing with the district court's finding that Schreiber's conduct did not rise to the level of illegal, oppressive, or fraudulent conduct and that Detter did not show that Schreiber was misapplying or wasting corporate assets, the Court of Appeals also affirmed the district court's denial of attorney fees to Detter. *Id.*

## ASSIGNMENTS OF ERROR

In his petition for further review, Detter assigns, restated and condensed, that the Court of Appeals erred in determining that

(1) goodwill is not part of the valuation in a dissolution proceeding of a professional corporation and (2) Schreiber's conduct was not illegal, oppressive, or fraudulent and did not waste or misapply corporate assets.

## STANDARD OF REVIEW

An action seeking corporate dissolution is an equitable action. *Woodward v. Andersen*, 261 Neb. 980, 627 N.W.2d 742 (2001). On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court. *State ex rel. City of Alma v. Furnas Cty. Farms*, 266 Neb. 558, 667 N.W.2d 512 (2003).

## ANALYSIS

A trial court's valuation of a closely held corporation is reasonable if it has an acceptable basis in fact and principle. *Schuman v. Schuman*, 265 Neb. 459, 658 N.W.2d 30 (2003). The issue presented by this case is whether a professional corporation can have goodwill as a distributable asset in a corporate dissolution proceeding.

> " 'Good-will is the advantage or benefit which is acquired by an establishment beyond the mere value of the capital, stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers, on account of its local position or common celebrity, or reputation for skill or affluence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices.' "

*Taylor v. Taylor,* 222 Neb. 721, 727-28, 386 N.W.2d 851, 856-57 (1986), quoting *Haverly v. Elliott*, 39 Neb. 201, 57 N.W. 1010 (1894).

Contrary to the Court of Appeals' decision, we conclude that our opinion in *Taylor, supra*, should not be applied solely to marital dissolutions. In *Taylor*, the husband was a physician and the sole practitioner and shareholder of a professional corporation, his medical practice. The issue was whether professional goodwill should be included as an asset in the marital estate. This court stated:

> Virtually any income-producing entity, regardless of the nature of the business organization, may have . . . an intangible asset [of] goodwill. To the extent that such intangible asset's value results from recurrent customer patronage, there is no question that goodwill is property which may be considered as a part of the marital estate . . . .

*Taylor*, 222 Neb. at 728-29, 386 N.W.2d at 857. See, also, *Tarry v. Johnston*, 114 Neb. 496, 503, 208 N.W. 615, 619 (1926) ("good will of a professional business may be legally sold in connection with other property rights to which it is attached").

Recognizing in *Taylor, supra*, a split of authority on the question of whether professional goodwill can be a divisible asset in a marital dissolution proceeding, we stated that courts affirmatively answering the question had adopted a capitalization of excess earnings method of valuation. We further stated that although this method represents the earning capacity of a professional practice, it "does not necessarily represent an asset which may be sold, transferred, or assigned." *Taylor*, 222 Neb. at 729, 386 N.W.2d at 858. We stated that professional practices raise special concerns "because goodwill is likely to depend on the professional reputation and continuing presence of a particular individual in that practice," *id.*, but concluded that whether a professional business has goodwill with a value distinct from the practitioner's presence is a question of fact:

> Consequently, where goodwill is a marketable business asset distinct from the personal reputation of a particular individual, as is usually the case with many commercial enterprises, that goodwill has an immediately discernible value as an asset of the business and may be identified as an amount reflected in a sale or transfer of such business. On the other hand, if goodwill depends on the continued presence of a particular individual, such goodwill, by definition, is not a marketable asset distinct from the individual. Any value which attaches to the entity solely as a result of personal goodwill represents nothing more than probable future earning capacity . . . .
>
> Accordingly, to be [considered] as property divisible and distributable in a dissolution proceeding, we conclude that goodwill must be a business asset with value independent

of the presence or reputation of a particular individual, an asset which may be sold, transferred, conveyed, or pledged. In so characterizing goodwill as marital property . . . *we neither state nor imply that goodwill, as a salable or marketable business asset, may never exist in a professional practice.* . . . If a party produces appropriate evidence establishing salability or marketability of goodwill as a business asset of a professional practice, professional goodwill may be considered in determining value of property in a marital estate to be divided in a dissolution proceeding. *Also, we do not reject in all cases capitalization of excess earnings as a method to determine earning capacity.*

. . . [P]rofessional qualities of a practitioner are often critical to the existence and continuation of professional goodwill. Professional goodwill may be personal in nature and, therefore, not a readily salable or marketable item. Under such circumstances goodwill has no existence independent of the professional generating that goodwill. . . . *Whether goodwill exists and whether goodwill has any value are questions of fact.*

(Emphasis supplied.) *Taylor v. Taylor*, 222 Neb. 721, 731-32, 386 N.W.2d 851, 858-59 (1986).

It would be incongruent for this court to hold that, with appropriate evidence, goodwill of a professional corporation can be a divisible property asset in a marital dissolution proceeding but not a distributable asset if the same professional actually dissolves his or her practice subsequent to the divorce. The cases from other jurisdictions relied upon by the Court of Appeals do not persuade us that our reasoning in *Taylor* should not be applied equally to business dissolutions.

In *Salinas v. Rafati*, 948 S.W.2d 286, 290 (Tex. 1997), the Texas Supreme Court held that the trial court improperly considered intangibles in the valuation of a dissolved partnership of radiologists "[t]o the extent that the valuation of the dissolved partnership was based on the goodwill attributable to the personal skills and talents of the former partners . . . ." However, the court pointedly stated:

There is no contention nor is there any evidence that the name of the former partnership had goodwill separate and

apart from the personal talents and abilities of each of the partners or that any partner had the right or the desire to form a new partnership using the name of the dissolved partnership.

*Id.*

In a later case, the Texas Court of Appeals specifically rejected a party's contention that a professional partnership does not have goodwill value as a matter of law. *Welder v. Green*, 985 S.W.2d 170 (Tex. App. 1998). In *Welder*, the court clarified that under Texas law, a professional partnership can have goodwill value, the same as a mercantile partnership, if the business has a "generally recognized name, that would lead patrons to do business with any person or firm using that name," 985 S.W.2d at 179, or goodwill that is attached to a "location, such as the corner store" that will be patronized despite the dissolution, *id.* at 178.

In *Smith, Keller & Assoc. v. Dorr & Assoc.*, 875 P.2d 1258, 1265 n.5 (Wyo. 1994), the Wyoming Supreme Court stated in a footnote that "[t]he accepted rule has recognized that professional partnerships do not have a goodwill asset [unless] the facts and circumstances show an exception to the general rule is intended by the parties." (Emphasis omitted.) This statement, however, is merely dicta, as the court was not required to decide that issue in order to resolve the case. See *id.* (determining that plaintiffs were entitled to accounting and that because earlier arbitration decision had not been appealed, arbitrators' determination that firm's assets included client goodwill was controlling). See, also, *Pribil v. Koinzan*, 266 Neb. 222, 232, 665 N.W.2d 567, 576 (2003) ("case is not authority for any point not necessary to be passed on to decide the case").

While the dicta in *Smith, Keller & Assoc., supra*, is indicative of how Wyoming's Supreme Court might rule on the issue of professional goodwill as a distributable asset in a dissolution proceeding, it is not consistent with this court's reasoning in *Taylor, supra*, or our prior decisions involving the dissolution or sale of professional entities. See, *Thomas v. Marvin E. Jewell & Co.*, 232 Neb. 261, 440 N.W.2d 437 (1989) (concluding that there was no goodwill to split upon dissolution of accounting firm *when evidence showed* that departing partners in accounting firm had taken files of clients they wished to retain and that despite being

contacted by both new partnerships, clients remained with firm that had their files); *Bailey v. McCoy*, 187 Neb. 618, 193 N.W.2d 270 (1971) (determining goodwill value of accounting and tax services firm in dissolution proceeding where provision in partnership agreement valued partnership based on annual income); *Tarry v. Johnston*, 114 Neb. 496, 208 N.W. 615 (1926).

Further, while there is a split of authority on this issue, see *Snowberger v. Young*, 536 P.2d 1069 (Ariz. App. 1975) (not reaching issue in appeal from arbitration award but citing cases showing split of authority), cases from other jurisdictions, including those from Texas, support our determination that whether goodwill is a distributable asset in a professional entity presents a question of fact. See, *Stefanski v. Gonnella*, 15 Mass. App. 500, 446 N.E.2d 734 (1983) (relating history of Massachusetts case law deciding issue as question of fact); *Durio v. Johnson*, 68 N.M. 82, 85, 358 P.2d 703, 705 (1961) (concluding in action by veterinarian partner to recover agreed-upon price for his interest from former partner that better rule was "good will also exists in professional practice, or in business founded upon personal skill and reputation and is salable"); *Spaulding v. Benenati*, 57 N.Y.2d 418, 442 N.E.2d 1244, 456 N.Y.S.2d 733 (1982) (holding that goodwill of dental practice could be sold by deceased dentist's wife who was sole beneficiary of his estate when sale of goodwill included something other than personal attributes of professional, such as right to practice at same location); *Berg v. Settle*, 70 Wash. 2d 864, 425 P.2d 635 (1967) (evidence supported trial court's finding of professional goodwill in accounting firm based on offer made to prospective partner which included purchase of goodwill).

█ Under our de novo review, we conclude that both the district court and Court of Appeals determined, as a matter of law, that a professional practice could not have goodwill value as a distributable asset upon dissolution. That determination is contrary to this court's conclusion in *Taylor v. Taylor*, 222 Neb. 721, 386 N.W.2d 851 (1986), that the existence of professional goodwill as a distributable asset presents a question of fact. Accordingly, the Court of Appeals' opinion affirming the district court's determination that goodwill cannot be a distributable asset in the dissolution of a professional entity is reversed, and the cause remanded. See *Schuman v. Schuman*, 265 Neb. 459,

658 N.W.2d 30 (2003). Upon remand, the district court is to determine in the first instance whether, given the record made at trial, Detter has produced appropriate evidence establishing salability or marketability of goodwill as a business asset and, if so, to determine that value.

## ATTORNEY FEES

In his second assignment of error, Detter argues that the Court of Appeals erred in concluding Schreiber's conduct was not illegal, oppressive, or fraudulent and that the corporation's assets were not being misapplied or wasted.

When a corporation makes an election to purchase a petitioning shareholder's shares, § 21-20,166(5)(b) allows the court to award the petitioning shareholder reasonable attorney fees and expenses if the shareholder had probable grounds for obtaining relief under either § 21-20,162(2)(a)(ii) or (iv). Those subsections delineate two of the four situations in which a shareholder may seek corporate dissolution. Under subsection (2)(a)(ii), a shareholder may seek dissolution because the directors or those in control have acted in a manner that is illegal, oppressive, or fraudulent. Under subsection (2)(a)(iv), a shareholder may seek dissolution when corporate assets are being misapplied or wasted.

Upon our de novo review of the record, we agree with the Court of Appeals that the district court did not err in determining that Detter failed to show Schreiber's actions rose to the level of being illegal, oppressive, or fraudulent or that Schreiber misapplied corporate funds.

## CONCLUSION

We affirm the Court of Appeals' determination that Detter has failed to show probable grounds entitling him to reasonable expenses and attorney fees. We conclude, however, that the district court and Court of Appeals erred in determining, as a matter of law, that the value of a closely held, professional corporation could not include goodwill.

The judgment of the Court of Appeals is reversed in part, and the cause remanded with directions to the Court of Appeals to reverse the district court's judgment determining the value of

MHAH without consideration of Detter's evidence regarding MHAH's goodwill, and to remand the matter for further proceedings consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.