677 N.W.2d 512 (2004)
12 Neb.App. 480
Jere D. DETTER, appellant,
v.
MIRACLE HILLS ANIMAL HOSPITAL, P.C., a Nebraska corporation, appellee.
No. A-02-688.
Court of Appeals of Nebraska.
April 6, 2004.
*513 Duane M. Katz, Omaha, for appellant.
Robert E. O'Connor, Jr., Omaha, for appellee.
HANNON and INBODY, Judges, and BUCKLEY, District Judge, Retired.
INBODY, Judge.

INTRODUCTION
Jere D. Detter appeals a decision of the Douglas County District Court, which found Miracle Hills Animal Hospital, a professional corporation owned by veterinarians Detter and Jeffrey Schreiber, to be worth $35,912 and valued Detter's portion of the corporation at $17,956. For the reasons set forth herein, we affirm.

STATEMENT OF FACTS
Prior to 1988, Detter ran a mobile veterinary practice in the Omaha, Nebraska, area out of a modified van. In approximately 1988, Detter met Schreiber, another Omaha veterinarian, who was running a practice out of the Omaha College of Health Careers. Detter initially rented space from Schreiber while continuing to *514 run his mobile practice. Eventually, Detter and Schreiber decided that they should combine their talents and create one animal hospital. In January 1991, Detter and Schreiber agreed to form the Miracle Hills Animal Hospital (hereafter MHAH). Part of their agreement included Schreiber's signing promissory notes, totaling $19,000, over to Detter. This was to account for Detter's more valuable practice and equipment, which he was bringing to MHAH.
Detter and Schreiber began to do business as MHAH in Omaha. Soon thereafter, Schreiber's wife, Linda Schreiber (Linda), began working at MHAH as a groomer. When Linda first began at MHAH, there was an oral agreement that she would get 60 percent of her fees and that MHAH would get the other 40 percent. While Linda used mostly her own equipment, MHAH provided her with space, supplies, scheduling, and other staff assistance. In 1993, Schreiber told Detter that he felt Linda deserved to be paid better. As a result, they made two additional agreements: MHAH would buy Detter's modified van from him, and Linda would be allowed by MHAH to keep all of her grooming profits and would pay rent for the space and services provided her by MHAH.
Detter and Schreiber operated this way until October 1997. When Schreiber made his payment to Detter on the promissory notes for that month, he informed Detter that it would be the last payment he would make until Detter agreed to compensate him for past and future management services. Detter told Schreiber that Schreiber would have to abide by their 1991 agreement and pay off the promissory notes before Detter would pay management fees to Schreiber. They continued to have conversations about management fees, Linda's grooming services, and the valuation of each other's veterinary time. While they had discussed eventually phasing out Detter's mobile practice, it was still a main income source for MHAH. Detter also had reservations about Linda's grooming practice, believing that MHAH was providing too much for Linda's practice.
Soon, Detter and Schreiber began discussing reorganizing their business so that each of their incomes would be based on revenue production. In an attempt to resolve their differences, mediation was suggested, but it was not undertaken. Discussions were still going on until March 1998, when Detter offered to settle, for $14,000, the promissory notes and Schreiber's management fee requests. Schreiber turned down Detter's offer and counteroffered to settle for $11,000. Detter did not accept Schreiber's counteroffer, notifying Schreiber that they did not have any agreements on how to handle management fees. On April 27, Detter sent a demand letter on the promissory notes to Schreiber; Schreiber responded to the letter by notifying Detter that he should feel free to institute litigation.
On May 1, 1998, Detter withdrew his settlement offer. Schreiber again offered to settle the promissory notes and management fees for $11,000, but again, Detter turned down the offer. Soon thereafter, Schreiber delivered an $11,000 check to Detter, claiming that that amount represented full payment. Detter told Schreiber that no agreement had been made and notified Schreiber that he would be suing Schreiber on the promissory notes, and a suit was filed on May 12. On June 3, Schreiber's attorney contacted Detter, confirming that there were no restrictions on the $11,000 check Schreiber had written to Detter and that if Detter cashed the check, he could still pursue legal action for the remainder he felt was due on the promissory notes. At that point, Schreiber owed Detter approximately *515 $21,302.28, according to Detter's calculations. Detter did cash the $11,000 check after receiving the assurances from Schreiber's attorney that cashing the check would not affect his ability to sue for what he felt was the remaining balance.
In June 1998, Detter called a board meeting in an attempt to resolve the differences between himself and Schreiber. The meeting was held June 30, at which time the parties discussed reorganizing MHAH. An attorney was hired to bring the corporate records up to date, but Schreiber later indicated that no agreement had been made to hire the attorney and stopped payment on the check written for the attorney's services. Detter called another board meeting, which took place on August 5. Detter had called this meeting to discuss problems he had with Linda's grooming business and the way she was selling the inventory of MHAH without paying anything to MHAH. However, before the meeting began, Schreiber's attorney told Detter, "[Y]ou're going to vote yes to remove her, we're going to vote no, we're at an impasse, so what can we do to move on?"
Subsequently, the office environment became unpleasant. Schreiber began to keep MHAH's business checkbook at home, making it difficult for Detter to know the financial status of the business. Detter claims that the office staff would not work for him, would waste time, and would switch appointments to have customers see Schreiber instead of Detter and that on one occasion, Linda took a note Detter had left for Schreiber, ripped it up, and threw it away.
On September 19, 1998, Detter made an offer to Schreiber to settle their differences, offering to buy Schreiber's interest in MHAH for $60,000 minus what Schreiber still owed Detter on the promissory notes, a little over $10,000 by Detter's calculations. The offer would have been good either way, meaning that if Schreiber wanted to stay at MHAH, Detter would take $60,000 plus the balance of the promissory notes for his half of the business, and if Detter wanted to stay at MHAH, he would pay Schreiber $60,000 less the balance of the promissory notes. Schreiber did not respond to the offer. Detter then filed suit on November 18 to dissolve MHAH. Schreiber did respond after suit was filed, rejecting Detter's offer and making a counteroffer to pay Detter $10,000 for Detter's half of MHAH. Schreiber later increased his offer to $15,000, but both of those offers were rejected by Detter. Detter left MHAH on September 4, 1999, and resigned as a director and an officer.
The two lawsuits, on the promissory notes and on the dissolution and valuation of MHAH, were consolidated. During the trial, the court found against Schreiber in the suit on the promissory notes in the amount of $17,321.84, and that judgment has not been appealed by Schreiber. During trial on the dissolution and valuation case, the court refused to allow some of Detter's witnesses to testify. Detter wished to call Theresa Brinks and Amy Payton, both of whom are former MHAH employees. Detter claims that Brinks and Payton would have testified that the work environment had become very unpleasant; that some of the employees did not work well for Detter; that Linda went through Detter's briefcase, looking for personal information and items; that employees would hang up when Detter would call MHAH; and that employees would do things just to antagonize Detter, among other things. Detter also wanted to introduce the deposition of another former employee, Monica Lasher, into evidence. Detter alleged that Lasher's deposition would have included allegations of similar *516 occurrences. Detter wanted to enter these witnesses' testimony into evidence as proof of how MHAH was being run, but the court denied Detter's requests to call Brinks and Payton and to introduce Lasher's deposition, noting that all of this evidence would be irrelevant and immaterial.
Detter called an expert witness, Cynthia Wutchiett, who provided an opinion as to the valuation of MHAH. Wutchiett, a certified public accountant, testified that she had a great deal of experience with valuing veterinary practices because that was her specialty. She testified that the value of MHAH was $182,082 on November 17, 1998. Wutchiett also claimed that it was very difficult for a doctor leaving a veterinary practice to retain many of the clients he or she had served at the practice, citing a Kansas practice's relocation wherein only 30 to 40 percent of the clients were ultimately retained after aggressive advertising.
Schreiber called only two witnesses in his case in chief. The first witness was Ronald Nebbia, another certified public accountant. Nebbia testified that he disagreed with Wutchiett's valuation, specifically because she included goodwill in her valuation. Nebbia testified that "in a professional practice of this nature, goodwill primarily rests with the provider and not the practice." Schreiber entered into evidence Nebbia's detailed valuation of the practice at $35,912. The second witness was Schreiber himself. Schreiber took the stand and testified that among other things, he felt his management duties were undervalued, he felt he had settled the promissory notes with Detter for $11,000, and many of the former clients of MHAH had left to go elsewhere after Detter left.
At the end of evidence, the trial court found for Detter on the promissory notes, as noted above. The trial court then found that Wutchiett used an incorrect valuation method when valuing MHAH and that under Taylor v. Taylor, 222 Neb. 721, 386 N.W.2d 851 (1986), goodwill was not to be added to the valuation of a professional corporation like MHAH. The court found that Nebbia used the correct valuation method and found the value of MHAH to be $35,912. After making its award to Detter for the promissory notes, it awarded Detter an additional $21,006, which amounted to half the $35,912 value of the practice ($17,956) plus half the $6,100 value of the van ($3,050). This $21,006 amount was to be paid to Detter by MHAH, which had elected under Neb.Rev. Stat. § 21-20,166(1) (Reissue 1997) to purchase Detter's shares of the corporation. Further, the court stated that it did not find that Schreiber engaged in behavior that was "illegal, oppressive, or fraudulent," Neb.Rev.Stat. § 21-20,162(2)(b) (Reissue 1997), and did not find that he misapplied or wasted corporate assets in contravention of § 21-20,162(2)(d). Therefore, the court did not award Detter his requested attorney fees or costs. Detter has timely appealed to this court.

ASSIGNMENTS OF ERROR
On appeal, Detter's assigned errors can be consolidated into the following issues: He contends that the district court erred (1) in its valuation of the corporation, (2) in failing to allow him to present all relevant evidence of Schreiber's conduct, and (3) in declining to award him attorney fees and expenses pursuant to § 21-20,166(5)(b).

STANDARD OF REVIEW
An action seeking corporate dissolution is an equitable action. Woodward v. Andersen, 261 Neb. 980, 627 N.W.2d 742 (2001). In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of *517 the trial court, provided that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. Id.; Hall v. Progress Pig, Inc., 259 Neb. 407, 610 N.W.2d 420 (2000); Anderson v. Cumpston, 258 Neb. 891, 606 N.W.2d 817 (2000).
In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. Kirchner v. Wilson, 262 Neb. 607, 634 N.W.2d 760 (2001). Because the exercise of judicial discretion is implicit in determinations of relevancy and admissibility under Neb.Rev.Stat. § 27-401 (Reissue 1995), the trial court's decision will not be reversed absent an abuse of discretion. Kirchner v. Wilson, supra. A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from acting, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. Id.

ANALYSIS
Valuation of Corporation.
Detter's first assignment of error is that the district court erred in its valuation of MHAH. Specifically, Detter claims that the district court erred in finding that Taylor v. Taylor, 222 Neb. 721, 386 N.W.2d 851 (1986), controls the determination of the value of a corporation in a corporation dissolution action, in rejecting Wutchiett's expert testimony, and in allowing no value for the goodwill of MHAH. A trial court's valuation of a closely held corporation is reasonable if it has an acceptable basis in fact and principle. Schuman v. Schuman, 265 Neb. 459, 658 N.W.2d 30 (2003); Keim v. Keim, 228 Neb. 684, 424 N.W.2d 112 (1988).
Section 21-20,166(4) provides:
If the parties are unable to reach an agreement as provided for in subsection (3) of this section, the court, upon application of any party, shall stay such proceedings and determine the fair value of the petitioner's shares as of the day before the date on which the petition under subdivision (2) of section 21-20,162 was filed or as of such other date as the court deems appropriate under the circumstances.
Therefore, it was the trial court's responsibility to "determine the fair value," id., of Detter's portion of MHAH.
The trial court held that Taylor controlled the issue of valuation in this case, relying on the following language in Taylor:
[W]here goodwill is a marketable business asset distinct from the personal reputation of a particular individual, as is usually the case with many commercial enterprises, that goodwill has an immediately discernible value as an asset of the business and may be identified as an amount reflected in a sale or transfer of such business. On the other hand, if goodwill depends on the continued presence of a particular individual, such goodwill, by definition, is not a marketable asset distinct from the individual. Any value which attaches to the entity solely as a result of personal goodwill represents nothing more than probable future earning capacity....
222 Neb. at 731, 386 N.W.2d at 858. The trial court then held that "good will for members of a professional corporation does not have a value when one or the *518 other part[y] leave[s]" and that "any good will that might have been present with ... Detter's participation in [MHAH] left with... Detter."
While the logic of Taylor and its progeny remains sound, Taylor deals with a partner of a professional corporation and his spouse involved in a marital dissolution. In contrast, in the instant case, the two members of a professional corporation are dissolving the corporation. Despite his assertion that the trial court relied too heavily on Taylor, however, Detter is unable to point to any Nebraska law that controls the issue. Detter merely points out that the operative statute requires the court to come up with a "`fair value of the petitioner's shares.'" (Emphasis omitted.) Brief for appellant at 25. As we have also been unable to discover Nebraska law on this issue, we determine that this is a case of first impression in Nebraska and that we must therefore look elsewhere for guidance in this case.
We find a case from the Texas Supreme Court instructive. In Salinas v. Rafati, 948 S.W.2d 286 (Tex.1997), three radiologists had established a professional partnership. When one of the radiologists elected to leave the partnership due to internal strife, a dispute arose over the value of his share of the partnership. Much like Detter in the instant case, the departing radiologist wanted to compute the value of his share of the partnership using a formula including goodwill. The Texas Supreme Court noted that "the value [brought by the departing radiologist and] attributed to the partnership was largely based on [his] talents and abilities... and [his] ability to generate income in the future." Id. at 290. That court continued by holding that "[t]o the extent that the valuation of the dissolved partnership was based on the goodwill attributable to the personal skills and talents of the former partners, [the trial court] improperly took into account intangibles that were not partnership assets." Id.
The Wyoming Supreme Court held similarly in Smith, Keller & Assoc. v. Dorr & Assoc., 875 P.2d 1258 (Wyo.1994). In Smith, Keller & Assoc., four accountants had created a professional partnership. When the partnership dissolved, arguments arose over the value of the departing accountants' shares of the partnership. In dealing with the question of whether to include goodwill in the valuation of the partnership, the Wyoming Supreme Court noted in a footnote: "Goodwill represents an intangible asset that refers to the ability of a professional firm to attract clients as a result of the firm's name, reputation, location, managerial skill, and technological resources.... The accepted rule has recognized that professional partnerships do not have a goodwill asset." (Emphasis omitted.) Id. at 1265, n. 5.
We find the reasoning of the Texas Supreme Court and the Wyoming Supreme Court persuasive. As the former of those two courts held in Salinas v. Rafati, 948 S.W.2d at 291:
[I]t is evident that a valuation based on the earnings of the [radiologists] improperly takes into account goodwill that is attributable only to the professionals personally.... Each of the former partners now has the opportunity to compete for the partnership's former business....
... [A] rule of law that would allow a partner to recover a share of a former partner's ability to generate income under the guise of goodwill [would be incongruous].
It has long been held that the analysis for determining the value of a professional partnership and the analysis for determining the value of a professional corporation would be the same. Therefore, we decide *519 that the trial court's determination that goodwill should not be included as an asset of a closely held corporation was not error.
Detter also claims that the court erred by rejecting Wutchiett's testimony. In his brief, Detter alleges that Wutchiett's credibility is "undeniable," brief for appellant at 27; that "[h]er experience with veterinarians is decisive," id.; and that "[t]he witness who provided an opinion of value and who was clearly the most qualified was Wu[tchie]tt," id. at 28. While the credentials of Wutchiett are certainly impressive, she determined the value of MHAH using a method giving the corporation credit for goodwill. As we mentioned previously, goodwill is not an asset with an assignable value in a professional corporation; it is not a marketable asset that stays with a corporation, but, rather, a nonmarketable one that leaves with a professional. Because Wutchiett's valuation of MHAH incorporated an asset that is not a marketable asset, we affirm the trial court's decision to reject her testimony. Based on our review of the record, we find that the trial court properly rejected Detter's method of valuation for MHAH. Accordingly, we affirm the trial court's valuation of MHAH.
Failure to Allow Detter to Present Relevant Evidence.
Detter claims that the district court erred in failing to allow him to present relevant testimony from Lasher, Brinks, and Payton which he claimed showed that Schreiber's and Linda's conduct was illegal and oppressive and caused a misapplication and waste of MHAH's assets. The court found that the proffered testimony was irrelevant.
Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. § 27-401; V.C. v. Casady, 262 Neb. 714, 634 N.W.2d 798 (2001). The exercise of judicial discretion is implicit in determinations of relevancy, and a trial court's decision regarding it will not be reversed absent an abuse of discretion. State v. McLemore, 261 Neb. 452, 623 N.W.2d 315 (2001). Evidence which is not relevant is not admissible. Neb.Rev.Stat. § 27-402 (Reissue 1995).
To constitute reversible error in a civil case, the admission or exclusion of evidence must unfairly prejudice a substantial right of a litigant complaining about evidence admitted or excluded. Kirchner v. Wilson, 262 Neb. 607, 634 N.W.2d 760 (2001).
Detter made offers of proof regarding the oral testimony of Brinks and Payton and the deposition testimony of Lasher. The offers of proof essentially provided examples of conflicts between Linda and Detter and between another MHAH employee, Jenny Hollinger, and Detter, such as Hollinger's refusal to assist Detter, Linda's intrusion into Detter's briefcase searching for personal information and items, Linda's and Hollinger's hanging up on Detter or placing him on hold unnecessarily when he called in, Linda's and Hollinger's writing rude notes on a calendar or appointment book, and fights over a radio station. However, there was no evidence that Schreiber was responsible for, or encouraged, this behavior or otherwise fostered the conflicts.
Furthermore, § 21-20,162 provides that a court may dissolve a corporation "(2) [i]n a proceeding by a shareholder if it is established that ... (b) [t]he directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent... or (d) [t]he corporate assets are being *520 misapplied or wasted." (Emphasis supplied.) Neither Linda nor Hollinger was a director or otherwise in control of MHAH, and therefore, this evidence was not relevant. Consequently, this assignment of error is without merit.
Failure to Award Attorney Fees and Expenses.
Finally, Detter contends that the district court erred in declining to award him attorney fees and expenses pursuant to § 21-20,166(5)(b). This decision was based upon the court's finding that Schreiber did not misapply or waste corporate assets.
Section 21-20,166(5)(b) provides, "If the court finds that the petitioning shareholder had probable grounds for relief under subdivision (2)(b) or (d) of section 21-20,162, it may award to the petitioning shareholder reasonable attorney's fees and expenses and fees and expenses of any experts employed by him or her." As noted above, § 21-20,162 provides that a court may dissolve a corporation "(2) [i]n a proceeding by a shareholder if it is established that ... (b) [t]he directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent... or (d) [t]he corporate assets are being misapplied or wasted."
As discussed earlier, the behavior of other employees, such as Linda or Hollinger, cannot be considered here because they were not "directors" or "in control of the corporation," see § 21-20,162(2)(b). Therefore, we must focus squarely on the behavior of Schreiber himself. The trial court stated that it "[did] not find that ... Schreiber was at anytime misapplying or wasting the corporate assets[,] and [the court] therefore decline[d] to award attorney fees under ... § 21-20[,]162(2)(b) or (d)."
Much of the conduct Schreiber engaged in may have been unkind, unfriendly, mistrusting, and greedy. The record indicates that Schreiber, on different occasions, kept the corporate checkbook at home and away from Detter, attempted to get Detter to accept less than what was owed on the promissory notes, wanted to pay Linda more than she ought to have been paid, and allowed employees to treat Detter, his business partner, disrespectfully. The district court specifically found:
[I]t appears to the Court that Schreiber attempted to put the squeeze on [Detter] by attempting to negotiate something on the money [Schreiber] owed on the promissory notes and also to force Detter to pay him remuneration for past manager fees and future manager fees....
. . . .
. . . [Schreiber's] conduct toward [Detter] while the corporate matters were wound up was much less than civil and certainly not fair.
While we agree with the district court that Schreiber's conduct was not kind and was perhaps unfair, the record does not indicate that Schreiber's behavior was "illegal, oppressive, or fraudulent," see § 20-21,162(2)(a)(ii). It also does not show that Schreiber was misapplying or wasting corporate assets. We find that the district court did not err in denying Detter's request for attorney fees and costs.

CONCLUSION
Detter's expert, Wutchiett, failed to use a method of valuation that has been approved in Nebraska. Therefore, we find that the trial court properly rejected her testimony. Based on our review of the record, our conclusion is that the trial court used an appropriate method of valuation, and we affirm the trial court's valuation of MHAH. The trial court properly *521 refused to award Detter attorney fees and costs and appropriately refused to allow testimony by Brinks, Payton, and Lasher. Therefore, the trial court's decision is affirmed in its entirety.
AFFIRMED.