Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/09/2020 09:08 AM CDT

- 484 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
ANDERSON v. A & R AG SPRAYING & TRUCKING
Cite as 306 Neb. 484

Cheryl V. Anderson, appellee, v. A & R
Ag Spraying and Trucking, Inc., and
Michael Rafert, appellants.

___ N.W.2d ___

Filed July 17, 2020.    No. S-19-541.

1. **Equity: Stock: Valuation.** A proceeding under the provisions of Neb. Rev. Stat. § 21-2,201 (Cum. Supp. 2016) to determine the fair value of a petitioning shareholder's shares of stock is equitable in nature.

2. **Equity: Appeal and Error.** An appellate court reviews an equitable action de novo on the record and reaches a conclusion independent of the factual findings of the trial court; however, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstance that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.

3. **Statutes: Appeal and Error.** Statutory interpretation is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below.

4. **Statutes: Legislature: Intent.** In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.

5. **Expert Witnesses.** The determination of the weight that should be given expert testimony is uniquely the province of the fact finder.

6. **Corporations: Stock: Valuation.** The trial court is not required to accept any one method of stock valuation as more accurate than another accounting procedure.

7. **Corporations: Valuation.** A trial court's valuation of a closely held corporation is reasonable if it has an acceptable basis in fact and principle.

8. **Equity: Stock: Valuation.** A proceeding to determine the "fair value" of corporate shares is equitable in nature.

- 485 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
ANDERSON v. A & R AG SPRAYING & TRUCKING
Cite as 306 Neb. 484

Appeal from the District Court for Pierce County: James G. Kube, Judge. Affirmed in part, and in part vacated.

George H. Moyer, of Moyer & Moyer, for appellants.

Kathleen K. Rockey, David E. Copple, and Allison Rockey Mason, of Copple, Rockey & Schlecht, P.C., L.L.O., for appellee.

Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Funke, J.

A purchasing shareholder appeals from the district court's valuation of the shares of a closely held corporation. We determine that the district court erred in entering judgment against both the shareholder and the corporation, rather than the shareholder alone, and in awarding corporate property rather than solely the value of the shares to be purchased. We otherwise affirm.

## BACKGROUND

Randy Anderson and Michael Rafert started a trucking and crop-spraying business in Plainview, Nebraska, in 1999. In 2000, articles of incorporation were filed with the Nebraska Secretary of State for A & R Ag Spraying and Trucking, Inc. (A & R). A & R is a subchapter C corporation under the Internal Revenue Code presently in good standing with the Nebraska Secretary of State. Randy and Rafert each owned 50 percent of A & R's shares. In practice, A & R functioned more like a partnership than a corporation. No corporate bylaws were prepared or executed, no formal meetings were held, no minutes were recorded to show A & R's general operations, and there was no agreement covering the rights of the shareholders in the event of a buyout.

Randy passed away in 2015, and his interest in A & R was transferred to his wife, Cheryl V. Anderson, through probate.

- 486 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
306 NEBRASKA REPORTS
ANDERSON v. A & R AG SPRAYING & TRUCKING
Cite as 306 Neb. 484

In February 2017, Cheryl and Rafert attended a corporate meeting to organize the corporation and elect officers and directors, but they could not agree on anything and the corporation became deadlocked.

Shortly thereafter, Cheryl petitioned the district court for Pierce County for judicial dissolution of the corporation pursuant to Neb. Rev. Stat. § 21-2,197(a)(2) (Cum. Supp. 2016). The petition named A & R and Rafert as defendants and sought relief against both defendants individually. A & R filed an answer which requested that the petition be dismissed. Rafert, represented by the same counsel as A & R, separately filed his own answer, which alleged that he is "ready, willing and able to purchase [Cheryl's] interest but has been unable to agree with her on a fair price," and asked that the court determine a fair price and direct the purchase on such terms and conditions as may be just. Rafert then filed an election to purchase the corporation in lieu of dissolution, pursuant to Neb. Rev. Stat. § 21-2,201(a) (Cum. Supp. 2016), claiming that he would purchase Cheryl's shares for $40,000. Pursuant to § 21-2,201(d), Rafert filed an application for a stay of the dissolution and a determination of the fair value of Cheryl's corporate shares as of the day before the date on which the petition for dissolution was filed.

At a bench trial held in the matter, the court heard opposing expert testimony from two experienced certified public accountants who opined on the value of Cheryl's shares. Each expert performed a valuation engagement in accordance with professional standards for business valuation. Both experts discussed the three methods of appraisal: the asset approach, the income approach, and the market approach.

Janet Labenz, who testified on behalf of Rafert, performed a valuation using the income approach, which measures a company's historical cashflow to determine a value based on projected future cashflows. A report authored by Labenz indicated that the asset approach would likely be realized only if the company's assets were sold and the liabilities retired. Lynette

- 487 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
306 NEBRASKA REPORTS
ANDERSON v. A & R AG SPRAYING & TRUCKING
Cite as 306 Neb. 484

Pofahl, who testified on behalf of Cheryl, issued two reports, and she ultimately used the asset approach, which Pofahl agreed measures a company's assets and debts to determine a value if the company were to be sold and liquidated. Both experts agreed that the market approach, which estimates a value utilizing comparable sales of similar businesses, does not apply in this case, because there are no publicly traded companies sufficiently similar to A & R.

Labenz has over 40 years of experience as a certified public accountant and holds the designations of being accredited in business valuation and certified in financial forensics. In performing her valuation, she reviewed the corporation's income tax returns from 2013 to 2016, internal depreciation schedules, and a financial statement prepared by A & R's accounting firm on March 31, 2017. She reviewed an appraisal of A & R's trucks, trailers, spraying equipment, vehicles, and tools, which appraisal produced a valuation of $1,275,175 as of April 7, 2017.

The evidence showed that A & R uses a cash-based accounting system. To calculate the normalized cashflow that the company generates, Labenz analyzed the income tax returns and made adjustments for depreciation of A & R's equipment and interest payments. Based on the income tax returns, the company made approximately $1,000 in 2013, lost $3,000 in 2014, lost $30,000 in 2015, and lost $185,000 in 2016. But in 2016, for example, A & R bought $285,000 worth of equipment and was permitted to deduct that amount on its tax return. After adding depreciation amounts for each year, and money paid on interest owed to its bank and equipment dealers, Labenz found that the company generated $220,000 in 2013, $240,000 in 2014, $305,000 in 2015, and $138,000 in 2016.

Labenz then used a discounted cashflow method in order to determine how much cash one would have upon purchasing the company. In her calculation, she deducted income taxes and the average cost of purchasing equipment, which she placed

- 488 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
ANDERSON v. A & R AG SPRAYING & TRUCKING
Cite as 306 Neb. 484

at $70,000 per year. After making these deductions, Labenz found that on average, the company generated $113,578 of after-tax income per year. Labenz then assumed a sustainable 2-percent growth rate, capitalized the income using a rate of 20 percent, and arrived at a business valuation of $677,781. This amount represents A & R's free cashflow, or money available to pay off debt or invest.

Labenz' final step was to subtract all of the corporation's debt. She testified that the corporation owed approximately $1,152,000 and that an interest payment of approximately $23,000 was due. Based on her testimony, after payment of the debt, she valued the company shares at negative $498,000. Labenz' report also contained a valuation using the asset approach of $142,000, to which she added a 15-percent discount for lack of marketability.

Pofahl has over 30 years' experience as a certified public accountant and 20 years' experience as a certified valuation analyst. In performing her valuation, Pofahl reviewed A & R's tax returns from 2010 to 2017, as well as depreciation schedules, the inventory from Randy's estate, and the same financial statement and equipment appraisals reviewed by Labenz.

In her first report, Pofahl valued the corporation using a hybrid of the income and asset methods. Pofahl found A & R's weighted cashflow to be $122,564 per year. Utilizing the "capitalization of benefits" method, Pofahl valued the company at $753,138. This value included a note receivable from Rafert, which Pofahl stated was $128,176. Pofahl issued a revised report prior to the second day of trial, after Labenz testified, which replaced the valuation approach shown in the first report. Pofahl stated in her revised report that because A & R is an asset-heavy business, the asset method is the most appropriate way to value A & R. She determined the adjusted book value of A & R to be $573,215 and then accounted for back wages payable, interest, and the April 7, 2017, appraisal. Pofahl ultimately concluded that A & R should be valued between $720,000 and $1 million.

- 489 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
306 NEBRASKA REPORTS
ANDERSON v. A & R AG SPRAYING & TRUCKING
Cite as 306 Neb. 484

In its posttrial decree, the court adopted the income approach for valuing A & R and concluded that the asset approach was not appropriate, because the corporation would not be liquidated. The court disagreed with Labenz' decision to subtract 100 percent of the debt from the valuation, because "a business, as an on-going concern, is not required to pay back all of its debt on a lump sum basis." However, the court agreed with Labenz' decision to subtract $23,000 for an interest payment. The court adjusted Labenz' valuation to $654,865. The court rejected Pofahl's use of the asset approach and considered her findings based on the income approach discussed in her first report. The court disagreed with Pofahl's decision to include $128,176 for the note receivable. The court referenced the fact that the amount of the note receivable was actually $98,176 due to a payment made by Rafert, but then concluded that the note receivable should not be included under the income approach, because there is no reason to assume the note will be collected in one lump sum. The court subtracted the $128,176 note receivable from Pofahl's original valuation of $753,138 to arrive at a value of $624,962. The court averaged the adjusted valuations of the two experts under the income approach and determined the value of A & R to be $639,914, as of March 31, 2017, with Cheryl's share valued at $319,957.

The court established a payment plan and entered judgment against both A & R and Rafert. The court found that "in the interest of equity, and in consideration of the circumstances surrounding the history of this litigation between the parties, [Cheryl] shall also be allowed to keep the Chevrolet Avalanche and the Ford pickup truck, which she currently has in her possession." The court dismissed Cheryl's petition to dissolve the corporation and ruled that she "shall no longer have any rights or status as a shareholder of the corporation, except the right to receive the amounts awarded by the Order of the Court." A & R and Rafert timely appealed, and we granted their petition to bypass.

- 490 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
ANDERSON v. A & R AG SPRAYING & TRUCKING
Cite as 306 Neb. 484

## ASSIGNMENTS OF ERROR

A & R and Rafert assign, restated, that the district court erred in (1) rendering judgment against A & R when it did not elect to purchase any shares, (2) valuing the corporation, and (3) awarding Cheryl two corporate vehicles without authorization under § 21-2,201(e).

## STANDARD OF REVIEW

[1,2] A proceeding under the provisions of § 21-2,201 to determine the fair value of a petitioning shareholder's shares of stock is equitable in nature.[1] An appellate court reviews an equitable action de novo on the record and reaches a conclusion independent of the factual findings of the trial court; however, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstance that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.[2]

[3] Statutory interpretation is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below.[3]

## ANALYSIS

### No Election to Purchase
### by A & R

[4] In their first assignment of error, A & R and Rafert contend that the court erred by entering judgment against A & R, because the corporation did not elect to purchase any shares from Cheryl. To resolve this issue, we must interpret provisions of the Nebraska Model Business Corporation Act, Neb. Rev. Stat. §§ 21-201 through 21-2,232 (Cum. Supp. 2016). In

---

[1] See *Rigel Corp. v. Cutchall*, 245 Neb. 118, 511 N.W.2d 519 (1994).

[2] *Id*.

[3] *Id*.

- 491 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
ANDERSON v. A & R AG SPRAYING & TRUCKING
Cite as 306 Neb. 484

construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.[4]

Cheryl initiated this matter by petitioning the district court to dissolve A & R pursuant to § 21-2,197(a)(2). Section 21-2,201(a) states in part, "In a proceeding under subdivision (a)(2) of section 21-2,197 to dissolve a corporation, the corporation may elect or, if it fails to elect, one or more shareholders may elect to purchase all shares owned by the petitioning shareholder at the fair value of the shares." Section 21-2,201(b) states that an election may be filed by "the corporation or one or more shareholders," and it further states that "[a]ll shareholders who have filed an election or notice of their intention to participate in the election to purchase thereby become parties to the proceeding . . . ."

Section 21-2,201(c) provides the parties 60 days from the filing of the first election to reach an agreement. If no agreement is reached, under § 21-2,201(d), any party may file an application for stay of the dissolution proceedings and for a determination by the court of the fair value of the petitioning shareholder's shares as of the day before the date on which the petition was filed or as of such other date as the court deems appropriate under the circumstances. Section 21-2,201(e) provides that upon determining the fair value of the shares, the court shall enter an order directing the purchase upon such terms and conditions as the court deems appropriate.

The record shows that Cheryl filed a petition under § 21-2,197(a)(2) and is the petitioning shareholder as described under § 21-2,201. A & R and Rafert separately filed answers to the petition. A & R's answer requested that the petition be dismissed. Rafert's answer requested that the court determine a fair price of Cheryl's interest and direct purchase on such

---

[4] *State ex rel. BH Media Group v. Frakes*, 305 Neb. 780, 943 N.W.2d 231 (2020).

- 492 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
ANDERSON v. A & R AG SPRAYING & TRUCKING
Cite as 306 Neb. 484

terms and conditions as may be just. Rafert timely filed an election to purchase pursuant to § 21-2,201(b), which was not resisted. A & R did not file an election to purchase. The record indicates that the corporation was declared deadlocked 2 months prior to Rafert's election to purchase.

Based on the language of § 21-2,201 understood in its plain, ordinary, and popular sense, we determine that A & R was not a party to the election-to-purchase proceedings. A & R remained a party in the dissolution proceedings, but the court stayed and ultimately dismissed the dissolution proceedings, due to Rafert's application under § 21-2,201(d). Because we determine that A & R was not a party to the election-to-purchase proceedings under § 21-2,201, we conclude that the court lacked statutory authority to enter judgment against A & R once it determined the value of Cheryl's shares. An appellate court has the duty to determine whether the lower court had the power, that is, the subject matter jurisdiction, to enter the judgment or other final order sought to be reviewed, and to vacate an order of the lower court entered without jurisdiction.[5] We vacate the judgment entered against A & R.

Fair Value

In Rafert's next assignment of error, he contends that in its valuation of A & R, the court failed to consider debt and speculated as to the corporation's value.

In its order, the district court found Pofahl's asset approach valuation to be "not helpful" and "hard to understand." Additionally, the district court agreed with Rafert's expert, Labenz, that because A & R uses a cash-based accounting system and was considered an ongoing concern, A & R should be valued according to the income approach rather than the asset approach. The court ultimately applied its modified income valuations of the two experts and split the difference. Rafert does not contend that the court erred in using the income

_____

[5] *In re Estate of Tizzard*, 14 Neb. App. 326, 708 N.W.2d 277 (2005).

- 493 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
ANDERSON v. A & R AG SPRAYING & TRUCKING
Cite as 306 Neb. 484

approach, nor does Cheryl contend that the court erred in not using Pofahl's asset approach. As a result, the sole issue presented is whether the district court's valuation is unreasonably high when considering Labenz' and Pofahl's reports and supporting testimony regarding the income approach.

[5-7] The determination of the weight that should be given expert testimony is uniquely the province of the fact finder.[6] The trial court is not required to accept any one method of stock valuation as more accurate than another accounting procedure.[7] A trial court's valuation of a closely held corporation is reasonable if it has an acceptable basis in fact and principle.[8]

[8] Section 21-2,201(d) states that upon application of any party, the court shall "determine the fair value of the petitioner's shares." This court has previously recognized that a proceeding to determine the "fair value" of corporate shares is equitable in nature.[9] While the Nebraska Model Business Corporation Act's election-to-purchase provisions do not explicitly define "fair value," the act's provisions governing appraisal rights state that "fair value" means the value of the corporation's shares determined "[u]sing customary and current valuation concepts and techniques generally employed for similar businesses in the context of the transaction requiring appraisal[.]"[10]

In the context of valuing a dissenting shareholder's stock, this court has observed that the "'real objective is to ascertain

---

[6] *Fredericks Peebles v. Assam*, 300 Neb. 670, 915 N.W.2d 770 (2018).

[7] *Bryan v. Bryan*, 222 Neb. 180, 382 N.W.2d 603 (1986).

[8] *Detter v. Miracle Hills Animal Hosp.*, 269 Neb. 164, 691 N.W.2d 107 (2005).

[9] See, *Stoneman v. United Neb. Bank*, 254 Neb. 477, 577 N.W.2d 271 (1998); *Rigel Corp., supra* note 1; *Becker v. Natl. American Ins. Co.*, 202 Neb. 545, 276 N.W.2d 202 (1979).

[10] § 21-2,171(4)(ii).

- 494 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
306 NEBRASKA REPORTS
ANDERSON v. A & R AG SPRAYING & TRUCKING
Cite as 306 Neb. 484

the actual worth of that which the dissenter loses because of his unwillingness to go along with the controlling stockholders, that is, to indemnify him.'"[11] Such a determination is to be based on all material factors and elements that affect value, given to each the weight indicated by the circumstances.[12] As most relevant here, such factors include, among others, the nature of the business and its operations, its assets and liabilities, its earning capacity, and the future prospects of the company.[13] Moreover, the stock is valued by assuming that the corporation will continue as a going concern and is not being liquidated.[14]

Rafert argues that the district court was required to consider the $1,152,000 of corporate debt in valuing A & R, but failed to do so, and that the court's decision not to depress the value of A & R was based on speculation.

The record is clear that the district court's valuation is based on the testimony of the experts and the supporting exhibits. Both experts agreed that under the income approach, the business must be valued as an ongoing concern, and that under the asset approach, the business is valued based on its assets and liabilities as if the business were to be sold and liquidated. The court considered Labenz' decision to subtract the whole $1,152,000 of debt and stated that "subtracting 100% of the debt from the valuation estimate of the business does not comport with the overall theory of the Income Approach because a business, as an on-going concern, is not required to pay back all of its debt on a lump sum basis." The court stated, "Of course, debt will have to be serviced on an ongoing basis, but on a much smaller scale than the total amount owed." The court agreed with Labenz' decision to subtract

---

[11] *Rigel Corp., supra* note 1, 245 Neb. at 127, 511 N.W.2d at 524 (quoting *Warren v. Balto. Transit Co.*, 220 Md. 478, 154 A.2d 796 (1959)).

[12] See *id*.

[13] *Id*.

[14] *Id*.

- 495 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
306 NEBRASKA REPORTS
ANDERSON v. A & R AG SPRAYING & TRUCKING
Cite as 306 Neb. 484

a $23,000 interest payment that was due, and it noted that
Labenz accounted for ongoing interest payments when she cal-
culated A & R's normalized cashflow. Therefore, Rafert's claim
that the court failed to consider debt is not correct.

Additionally, Rafert failed to prove that a lower valuation
would be more accurate. The court noted that both experts
"generously included" assumptions and limiting conditions in
their opinions, which made arriving at an objective valuation
of the corporation difficult. Labenz contradicted her own testi-
mony when she strayed from the income approach by subtract-
ing all of the corporation's debt. The court was not engaging
in speculation when it rejected Labenz' blending of the income
and asset methods as unpersuasive.

The evidence indicates that the trucking and spraying opera-
tions of the business have continued after Randy's death
and that there have been no efforts to liquidate. The experts
agreed that A & R consistently generates significant cash
each year. A & R's personal banker testified that the company
pays loans on an annual basis and that payments are made
when they become due. He also stated that the company's
accounts receivable are collectable, which Rafert confirmed
in his testimony. The court carefully considered the opinions
of both experts, identified aspects of the opinions which are
inconsistent with the income approach, adjusted each opinion
accordingly, and determined a value based on the average of
the two opinions.

Upon our de novo review, just as the trial court did, we
find that there is evidence in conflict on material issues of fact
concerning the appropriate considerations in valuing Cheryl's
shares in A & R. As a result, we consider and give weight to
the fact that the trial court observed the witnesses and accepted
one version of the facts over another.[15] The trial court's val-
uation of A & R is reasonable and has an acceptable basis in

---

[15] *Fredericks Peebles, supra* note 6.

- 496 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
ANDERSON v. A & R AG SPRAYING & TRUCKING
Cite as 306 Neb. 484

fact and principle. The court did not err in valuing Cheryl's shares to be purchased by Rafert. This assignment of error is without merit.

## Vehicles

Rafert's final assignment of error is that the court improperly awarded Cheryl two corporate vehicles pursuant to § 21-2,201(e). Rafert contends that the award of the vehicles constituted equitable division of corporate property rather than a determination of fair value under § 21-2,201(d). Cheryl counters that the award of the vehicles was proper, because under § 21-2,201(e), the court may award expenses to the petitioning shareholder.

The court heard testimony that prior to Randy's death, Cheryl had in her possession two vehicles which were owned by the company. After Randy's death, Cheryl retained possession of the vehicles despite Rafert's request that these vehicles be returned. The vehicles were included in the equipment appraisal, which both experts utilized in valuing Cheryl's shares in A & R. In its decree, the trial court found that "in the interest of equity, and in consideration of the circumstances surrounding the history of this litigation between the parties, [Cheryl] shall also be allowed to keep the Chevrolet Avalanche and the Ford pickup truck, which she currently has in her possession."

Under § 21-2,201(e), when a corporation or shareholder makes an election to purchase a petitioning shareholder's shares, the court is authorized to award expenses to the petitioning shareholder "[i]f the court finds that the petitioning shareholder had probable grounds for relief under subdivision (a)(2)(i)(B) [illegal, oppressive, or fraudulent conduct] or (D) [misapplication or waste of corporate assets] of section 21-2,197 . . . ." The foregoing provision delineates two of the four situations in which a shareholder may seek corporate dissolution. We agree with Rafert that the court could not have awarded Cheryl expenses under § 21-2,201(e),

- 497 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
306 NEBRASKA REPORTS
ANDERSON v. A & R AG SPRAYING & TRUCKING
Cite as 306 Neb. 484

because the court did not make the necessary findings under § 21-2,201(e) of probable grounds for relief. Cheryl's petition asserted causes of action for an accounting and breach of fiduciary duty, but the court dismissed Cheryl's petition and made no findings that she established probable grounds for relief concerning dissolution. We further note that Cheryl failed to prove any claim for expenses, because her statement of expenses provided to the trial court was not received into evidence and does not appear in our record.

Moreover, it is clear the court awarded Cheryl vehicles owned by the corporation, not litigation expenses. A court may have subject matter jurisdiction in a matter over a certain class of case, but it may nonetheless lack the authority to address a particular question or grant the particular relief requested.[16] Under the statutory procedure established by the Legislature for election-to-purchase proceedings under § 21-2,201, discussed above, a corporation does not become a party to the proceedings until it files an election to purchase. A & R did not file an election to purchase and was not a party to the election-to-purchase proceedings. Consequently, the court lacked the authority to award corporate assets to Cheryl. The award of the corporate vehicles is therefore vacated.

## CONCLUSION

For the foregoing reasons, we vacate the judgment entered against A & R and the award of vehicles to Cheryl. We otherwise affirm the judgment entered against Rafert.

AFFIRMED IN PART, AND IN PART VACATED.

HEAVICAN, C.J., not participating.

---

[16] See *Midwest Renewable Energy v. American Engr. Testing*, 296 Neb. 73, 894 N.W.2d 221 (2017).